[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-11266

_____

D.C. Docket No. 5:11-cv-00761-CLS


ALABAMA EDUCATION ASSOCIATION,
an Alabama non-profit corporation,
A-VOTE,
an Alabama political committee,
PAM HILL,
JEFF BREECE,
CHASSITY SMITH, et al.,

                    Plaintiffs - Appellees,

versus


STATE SUPERINTENDENT OF EDUCATION, STATE OF ALABAMA,
CHANCELLOR OF POSTSECONDARY EDUCATION, STATE OF
ALABAMA,
ATTORNEY FOR LEE COUNTY, STATE OF ALABAMA,

                    Defendants - Appellants.

_____

No. 11-11267

_____

D.C. Docket No. 5:11-cv-00761-CLS

ALABAMA EDUCATION ASSOCIATION,
an Alabama non-profit corporation,
A-VOTE,
an Alabama political committee,
PAM HILL,
JEFF BREECE,
CHASSITY SMITH, et al.,

Plaintiffs-Appellees,

versus

GOVERNOR OF ALABAMA AND PRESIDENT OF THE STATE SCHOOL
BOARD, DIRECTOR OF FINANCE, STATE OF ALABAMA,
COMPTROLLER, STATE OF ALABAMA,

Defendants-Appellants.

_____

No. 11-12609
_____

D.C. Docket No. 5:11-cv-01054-CLS

INTERNATIONAL ASSOCIATION OF FIREFIGHTERS,
An unincorporated labor organization,
FIREPAC,
a political action committee,
AMERICAN FEDERATION OF TEACHERS LOCAL 2115, et al.,

Plaintiffs-Appellees,

versus

SUPERINTENDENT OF EDUCATION,
in his capacity as the Superintendent of
Education of the State of Alabama,

STATE OF ALABAMA, CHANCELLOR OF POSTSECONDARY
EDUCATION, in her capacity as Chancellor of Postsecondary Education
of the State of Alabama, et al.,

                        Defendants-Appellants.

                  _____

                Appeals from the United States District Court
                   for the Northern District of Alabama
                  _____

                        (February 5, 2014)

Before COX and DUBINA, Circuit Judges, and HUNT,[*] District Judge.

DUBINA, Circuit Judge:

## I.  BACKGROUND

This appeal came to us following the district court's entry of a preliminary

injunction preventing enforcement of Alabama Act No. 2010-761 ("the Act"),

codified at Alabama Code §17-17-5.  The Act prohibits public employees from

"arrang[ing] by salary deduction *or otherwise*" for payments to (1) political action

committees or (2) organizations that use any portion of the dues for "political

activity."  *Id.* §17-17-5(b) (emphasis added).  The Act then goes on to define

"political activity" for the purposes of §17-17-5(b) only, limiting it to:

> a. Making contributions to or contracting with any entity which
>    engages in any form of political communication, including
>    communications which mention the name of a political candidate.

_____

[*]Honorable Willis B. Hunt, Jr., United States District Judge for the Northern District of
Georgia, sitting by designation.

    b. Engaging in or paying for public opinion polling.
    c. Engaging in or paying for any form of political communication, including communications which mention the name of a political candidate.
    d. Engaging in or paying for any type of political advertising in any medium.
    e. Phone calling for any political purpose.
    f. Distributing political literature of any type.
    g. Providing any type of in-kind help or support to or for a political candidate.

*Id*. §17-17-5(b)(1).

Appellees, the Alabama Education Association, its political action committee A-VOTE, and a handful of its individual members, brought a pre-enforcement, facial challenge to the Act. Two days before the Act was to take effect, the district court preliminarily enjoined its enforcement on two grounds. First, the district court concluded that the "or otherwise" language suffered from a constitutional overbreadth problem and risked prohibiting protected First Amendment activity. *Ala. Educ. Ass'n v. Bentley*, 788 F. Supp. 2d 1283, 1320 (N.D. Ala. 2011) ("*Bentley*"). Second, it found that the term "political activity" was unconstitutionally vague, such that those subject to the Act's criminal penalties could not determine whether their actions constituted "political activity." *Id.* at 1327–28.

Appellants, state officials charged with executing the Act, appealed the district court's grant of a preliminary injunction. Though we generally review a grant of a preliminary injunction for an abuse of discretion, we review underlying

4

conclusions of law *de novo*. *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1216 (11th Cir. 2008). The district court always lacks the discretion to apply an improper legal standard. *Id.*

In a facial challenge alleging overbreath and vagueness, "a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494, 102 S. Ct. 1186, 1191 (1982) (citations omitted). "If it does not, then the overbreadth challenge must fail." *Id.* As for vagueness, if the enactment implicates no constitutionally protected conduct, the inquiry on a facial challenge is whether "the enactment is impermissibly vague in all of its applications." *Id.* at 495, 102 S. Ct. at 1191; *see also Holder v. Humanitarian Law Project*, 561 U.S. 1, __, 130 S. Ct. 2705, 2718 (2010) (noting that a criminal statute is unconstitutionally vague if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement" (quotations omitted)). An enactment that is not impermissibly vague in all its applications will survive a vagueness challenge. *Village of Hoffman Estates*, 455 U.S. at 494–95, 102 S. Ct. at 1191.

A properly conceived ban on salary deductions to organizations engaged in political activity would be constitutional. *Ysursa v. Pocatello Educ. Ass'n*, 555

5

U.S. 353, 355, 129 S. Ct. 1093, 1096 (2009) ("[N]othing in the First Amendment prevents a State from determining that its political subdivisions may not provide payroll deductions for political activities.").  Accordingly, when first confronted with this controversy, this court asked the Alabama Supreme Court to weigh in on the Act's reach and help us assess whether the ban on salary deductions paid to organizations engaged in "political activities" was, in fact, properly conceived. *See Ala. Educ. Ass'n v. State Superintendent of Educ.*, 665 F.3d 1234, 1238 (11th Cir. 2011) ("A statute with a broader reach may implicate First Amendment concerns not explored in *Ysursa*.").  We certified two questions:

> (1) Is the "or otherwise" language in the statute limited to the use of state mechanisms to support political organizations, or does it cover all contributions by state employees to political organizations, regardless of the source?
>
> (2) Does the term "political activity" refer only to electioneering activities?

*Id.*  The Alabama Supreme Court answered our questions in *State Superintendent of Education v. Alabama Education Association*, __ So. 3d ____, No. 1110413, 2013 WL 5763283 (Ala. Oct. 25, 2013). [1]

## II.  DISCUSSION

A.  *The Overbreadth Challenge*

---

[1] The opinion of the Alabama Supreme Court is attached hereto as "Appendix I."

The Alabama Supreme Court's opinion easily resolves any concern that the "or otherwise" language is overbroad. Every member of the Alabama Supreme Court agreed that the language in question, in the context of the entire Act, prohibits only the use of state mechanisms to support politically active organizations. The Act does not prohibit "private forms of payment, i.e., forms of payment not facilitated by the government." *Id.* at ___, 2013 WL 5763283, at *7. This compels the conclusions that the Act only declines to promote speech, rather than abridging it, and that the Act does not implicate any constitutionally protected conduct, much less a substantial amount. *See Ysursa*, 555 U.S. at 359, 129 S. Ct. at 1098 (holding that Idaho's limitation on public employee payroll deductions did not implicate the First Amendment, as the prohibition simply prevented organizations from enlisting the state's support of their speech).

Accordingly, we hold that the Appellees cannot demonstrate a substantial likelihood of success on the merits of their overbreadth claim. *See Village of Hoffman Estates*, 455 U.S. at 494, 102 S. Ct. at 1191 (holding than if an enactment does not reach a substantial amount of constitutionally protected conduct, an overbreadth challenge to it will fail). It is clear to us that the district court applied

7

the wrong legal standard and abused its discretion in granting a preliminary injunction on that basis.[2]

B.  *The Vagueness Challenge*

This court geared its second question toward review of the district court's finding that the Act's definition of "political activities" is likely unconstitutionally vague and a violation of due process. *See Bentley*, 788 F. Supp. 2d at 1328 (granting a preliminary injunction after concluding there was a substantial likelihood the Act's challengers would "succeed in demonstrating this part of the statute is void for vagueness"); *cf. Village of Hoffman Estates*, 455 U.S. at 497, 102 S. Ct. at 1193 ("A law that does not reach constitutionally protected conduct and therefore satisfies the overbreadth test may nevertheless be challenged on its face as unduly vague, in violation of due process.").  We asked whether the term "political activities" as used in the Act reaches more than "electioneering activities," and the Alabama Supreme Court indicated that it does.  *State Superintendent of Educ.*, __ So. 3d at ____, 2013 WL 5763283, at *7 (holding that "political activity," as used and defined in Ala. Code § 17-17-5(b)(1), "embraces more than electioneering").

---

[2] Because the Act does not reach constitutionally protected conduct, the Defendants-Appellants need only demonstrate a rational basis to justify the Act's prohibition on payroll deductions going to organizations engaged in political activities.  *Ysursa*, 555 U.S. at 359, 129 S. Ct. at 1098 ("Given that the State has not infringed the unions' First Amendment rights, the State need only demonstrate a rational basis to justify the ban on political payroll deductions.").

To succeed in their void for vagueness challenge, the Act's challenger's "must demonstrate that the law is impermissibly vague in all of its applications." *Village of Hoffman Estates*, 455 U.S. at 497, 102 S. Ct. at 1193.  Where an enactment clearly covers some conduct in which a plaintiff engages, that plaintiff cannot complain of the vagueness of the law.  *Id.* at 495, 102 S. Ct. at 1191 ("A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law.").  In *Village of Hoffman Estates*, the Supreme Court of the United States concluded that a municipal ordinance requiring a license to sell "any items, effect, paraphernalia, accessory or thing which is designed or marketed for use with illegal cannabis or drugs" was not impermissibly vague in all its applications, despite its possible ambiguities.  455 U.S. at 500, 102 S.Ct. at 1194 (quoting the ordinance).  The ordinance's "designed for use" standard was "sufficiently clear to cover at least some of the items" the challenger sold.  *Id.* at 502, 102 S. Ct. at 1195.  Thus, the licensing requirement clearly applied to the plaintiff and its facial challenge failed.  *Id.* at 495, 102 S. Ct. at 1191; *see also Holder*, 561 U.S. at __, 130 S. Ct. at 2719 (remarking that the rule that one engaged in conduct clearly proscribed by a statute may not challenge the statute for vagueness "makes no exception for conduct in the form of speech").

Likewise, whatever else the Act's definition of political activities may encompass, it includes electioneering activities, in which the AEA and A-VOTE

9

concede they are engaged. (Appellees' Br. at 31; R. 34 at 59–60.) The definition of political activities, even prior to the Alabama Supreme Court's elucidation of the Act, gave the AEA and A-VOTE ample warning they engaged in political activities, and it gave the individual members warning that arranging for payroll deductions to AEA or A-VOTE was prohibited.

Some of AEA and A-VOTE's conduct indisputably falls within the Act's definition of political activity, and therefore the challengers cannot bring a facial challenge arguing the term is vague based on other applications. It is not substantially likely the challengers will succeed on the merits of their void for vagueness challenge,[3] and the district court erred in granting a preliminary injunction on that basis.

## III. CONCLUSION

For the foregoing reasons, we reverse the district court's order granting a preliminary injunction and remand this case for further proceedings consistent with this opinion.

**REVERSED and REMANDED.**

---

[3] A series of as applied challenges is a more appropriate forum for challenging other, potentially more vague applications of the Act. *Cf. Holder*, 561 U.S. at __, 130 S. Ct. at 2720 (holding that that though a statute might not be clear in every application, the fact that it was clear with respect to the plaintiffs' conduct meant that their vagueness claim failed).



**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0649), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2013-2014

---

## 1110413

---

### State Superintendent of Education et al.

### v.

### Alabama Education Association, an Alabama nonprofit corporation, et al.

### Certified Questions from the United States Court of Appeals for the Eleventh Circuit

### (No. 11-11266)

PARKER, Justice.

The United States Court of Appeals for the Eleventh Circuit has certified two questions to this Court pursuant to Rule 18, Ala. R. App. P.

1110413

## I. Facts and Procedural History

In <u>Davis v. Alabama Education Ass'n</u>, 92 So. 3d 737 (Ala. 2012), this Court summarized the facts underlying this litigation:

> "Employees of the State of Alabama are paid through the office of the comptroller. Subject to certain conditions, § 36-1-4.3, Ala. Code 1975, provides that the comptroller may make deductions from the salary of a State employee upon the employee's request. Specifically, § 36-1-4.3(a), Ala. Code 1975, provides:
>
>> "'The state Comptroller shall adopt statewide policies which provide for deductions from the salaries of state employees or groups of state employees whenever a request is presented to the state Comptroller by a group of participating state employees equal in number to at least 200 provided, however, that deductions being made as of April 23, 1985, shall continue to be made. The deductions shall be made at least monthly and shall be remitted to the appropriate company, association, or organization as specified by the employees. The deductions may be made for membership dues, and voluntary contributions, and insurance premiums. Any deduction provided under the provisions of this section may be terminated upon two months' notice in writing by a state employee to the appropriate company, association, or organization and to the appropriate payroll clerk or other appropriate officials as specified by the state Comptroller.'

2

1110413

"Section 36-1-4.4, Ala. Code 1975, prescribes other procedures relating to the salary deductions authorized in § 36-1-4.3:

"'The policies adopted by the state Comptroller for deductions from the salaries of state employees or groups of state employees for employee organizations shall provide that the deductions for membership dues and voluntary contributions shall be made based on membership lists and forms provided by the employees' organization. Such lists are to be corrected and revised annually according to procedures to be established by the state Comptroller. Membership dues and voluntary contributions currently authorized shall continue on an annual basis for the current yearly period and for each succeeding yearly period unless the employee revokes the deduction in writing within 10 days of the next succeeding yearly period. Voluntary contributions may be revoked by giving a 30-day notice in writing. New authorizations shall be permitted on a monthly basis according to procedures to be established by the state Comptroller. Upon leaving state service whether by death, retirement, termination, resignation, leave of absence or other means, payroll deduction of dues and authorized voluntary deductions shall cease. When an employee returns to state service from an approved leave of absence or other temporary leave, payroll deductions and voluntary contributions shall resume unless the employee revokes the deductions in writing. When amounts have been correctly deducted and remitted by the state Comptroller, the state Comptroller shall bear no further responsibility or liability for subsequent transactions.'

3

1110413

"On July 1, 2010, the comptroller implemented a new policy regarding salary deductions. Under this new policy, the comptroller stopped executing salary deductions designated for contributions to [the Alabama State Employees Association Political Action Committee]; the comptroller continued making deductions designated for the payment of dues to the [Alabama State Employees Association]. Likewise, the comptroller stopped executing salary deductions to a political-action committee affiliated with the Alabama State Troopers Association. Portions of an employee's salary no longer deducted as a result of this policy change were included in the employee's paychecks.

"The comptroller's change in the manner of executing salary deductions caused the AEA [the Alabama Education Association] to inquire of the comptroller whether a similar policy change in deductions would be made as to the salaries of State employees who elected to have contributions deducted for the benefit of the AEA. In conjunction with this inquiry, the comptroller was made aware that a portion of the deductions then being made for the benefit of the AEA were in turn contributed by the AEA to A-VOTE [AEA's political-action committee, Alabama Voice of Teachers for Education]. Because the comptroller could not ascertain what portion of the deductions designated for the AEA were passed on to A-VOTE, the comptroller ceased executing all salary deductions designated for the AEA on September 1, 2010.

"The comptroller based the aforesaid changes in the manner of executing salary deductions on his interpretation of the provisions in §§ 36-12-61 and 17-17-5, Ala. Code 1975. Section 36-12-61, Ala. Code 1975, provides:

"'It shall be unlawful for any officer or employee of the State of Alabama to use or to permit to be used any state-owned

4

1110413

property of any character or description, including stationery, stamps, office equipment, office supplies, automobiles or any other property used by him, in his custody or under his control for the promotion or advancement of the interest of any candidate for the nomination or election to any public office of the State of Alabama.'

"As then codified, § 17-17-5, Ala. Code 1975, provided in part that '[n]o person in the employment of the State of Alabama ... shall use any state ... funds, property, or time, for any political activities.'

"....

"Subsequently, in a special session, the legislature enacted, and the governor signed into law on December 20, 2010, Act No. 2010-761, Ala. Acts 2010 ('the Act'). The Act amended § 17-17-5, Ala. Code 1975, to explicitly state as follows:

"'(a) No person in the employment of the State of Alabama[, a county, a city, a local school board, or any other governmental agency, whether classified or unclassified,] shall use any state, county, city, local school board, or other governmental agency funds, property, or time, for any political activities.

"'(b) No person in the employment of the State of Alabama[, a county, a city, a local school board, or any other governmental agency] may arrange by salary deduction or otherwise for any payments to a political action committee or arrange by salary deduction or otherwise for any payments for the dues of any person so employed to a membership organization which

5

1110413

uses any portion of the dues for political activity. ...

   "'....

   "'Any organization that requests the State of Alabama, a county, a city, a local school board, or any other governmental agency to arrange by salary deduction or otherwise for the collection of membership dues from persons employed by the State of Alabama, a county, a city, a local school board, or any other governmental agency shall certify to the appropriate governmental entity that none of the membership dues will be used for political activity. Thereafter, at the conclusion of each calendar year, each organization that has arranged for the collection of its membership dues from persons employed by the State of Alabama, a county, a city, a local school board, or any other governmental agency shall provide the appropriate governmental entity a detailed breakdown of the expenditure of the membership dues of persons employed by the State of Alabama, a county, a city, a local school board, or any other governmental agency and collected by the governmental entity. Any organization that fails to provide the required certifications, that reports any expenditures for political activity, or that files false information about political activity in any of its reports shall be permanently barred from arranging for the collection of its membership dues by any governmental entity. The Examiners of Public Accounts shall annually review a sample of at least 10 percent of the certifications filed with each governmental entity and report its

6

1110413

findings to the appropriate governmental
entity....'"

92 So. 2d at 739-43 (footnote omitted).[1]

On February 25, 2011, the Alabama Education Association
("the AEA"), Alabama Voice of Teachers for Education ("A-
VOTE"), and six members of the AEA, namely, Pam Hill, Cathey
McNeal, Jeff Breece, Chassity Smith, Dorothy Strickland, and
Ronald Slaughter (the AEA, A-VOTE, and the individual members
of the AEA are hereinafter referred to collectively as "the
AEA plaintiffs"), filed a complaint in the United States
District Court for the Northern District of Alabama ("the
district court"), naming as defendants Governor Robert
Bentley; then State Superintendent of Education Joseph
Morton;[2] State Comptroller Thomas White; then State Finance

---

[1]In Davis v. Alabama Education Ass'n, the AEA and other
plaintiffs sued the state finance director and the state
comptroller, seeking declaratory relief and a permanent
injunction forcing the comptroller to resume the previous
practice of executing salary deductions designated for the
AEA. The Montgomery Circuit Court entered a preliminary
injunction against the finance director and the comptroller,
who then appealed to this Court. For reasons not relevant to
the present litigation, we dismissed the appeal as moot,
vacated the circuit court's preliminary injunction, and
remanded the case for the circuit court to dismiss the action.

[2]Thomas Bice replaced Joseph Morton as a defendant when
Bice became state superintendent of education.

7

1110413

Director David Perry;[3] then Chancellor of Post-Secondary Education Frieda Hill;[4] Madison County District Attorney Robert Broussard; then Lee County District Attorney Nick Abbett;[5] the Huntsville City Board of Education; the City of Madison Board of Education; and the Madison County Board of Education (hereinafter referred to collectively as "the Newton defendants," see supra note 3). In the complaint, the AEA plaintiffs challenged the constitutionality of Act No. 2010-761, Ala. Acts 2010 ("the Act"), under the First and Fourteenth Amendments to the United States Constitution.[6]

---

[3]Bill Newton replaced Marquita Davis, who, in turn, had replaced David Perry, as a defendant when Newton became acting state finance director.

[4]Mark Heinrich replaced Susan Price, who, in turn, had replaced Frieda Hill, as a defendant when Heinrich became the chancellor of post-secondary education.

[5]Robert T. Treese III replaced Nick Abbett as a defendant when Treese became Lee County District Attorney.

[6]The district court subsequently allowed a complaint in intervention to be filed by the Alabama State Employees Association ("the ASEA"); the ASEA's political-action committee ("SEA-PAC"); Randy Hebson, president of the ASEA; Edwin J. McArthur, executive director of the ASEA; and Larry Sanders, JoAnne Brown, and John Allen, all of whom are or were state employees, ASEA members, and SEA-PAC contributors. The intervenor plaintiffs asserted the same constitutional challenges that were asserted in the AEA plaintiffs' complaint.

1110413

On March 18, 2011, two days before the effective date of the Act, the district court issued a preliminary injunction enjoining the Newton defendants from "implementing or enforcing" the Act. The Newton defendants appealed the district court's issuance of the preliminary injunction to the United States Court of Appeals for the Eleventh Circuit.

On March 23, 2011, the International Association of Fire Fighters ("the IAFF"); FIREPAC, a political-action committee affiliated with the IAFF; IAFF Local 1349; Paul Cumbaa, a member of both the IAFF and IAFF Local 1349; IAFF Local 3948; Wilburn Cain, a member of both the IAFF and IAFF Local 3948; American Federation of Teachers ("AFT") Local 2115; AFT Local 2143; AFT Local 4866; AFT Local 6248; Thomas D. Johnson, a member of AFT Local 2143; and Cynthia R. Lee, a member of AFT Local 2115 (hereinafter referred to collectively as "the IAFF plaintiffs"), filed a complaint in the United States District Court for the Northern District of Alabama, naming as defendants Governor Robert Bentley; Attorney General Luther Strange; then State Superintendent of Education Joseph Morton;[7] then Chancellor of Post-Secondary Education Frieda

---

[7] See supra note 2.

9

1110413

Hill;[8] Reggie Copeland, Sr., Frederick Richardson, Jr., William Carroll, Jermaine A. Burrell, John C. Williams, Bess Rich, and Gina Gregory, who constitute all the members of the Mobile, Alabama, City Council; Samuel L. Jones, mayor of the City of Mobile; Ashley M. Rich, district attorney for Mobile County; George Areno, Mark Jones, Truman Norred, Sandra F. Suduth, and Derek Raulerson, who constitute all the members of the Jacksonville, Alabama, City Council; Johnny Smith, mayor of the City of Jacksonville; Brian McVeigh, district attorney for Calhoun County; and the Board of Trustees for Alabama State University (hereinafter referred to collectively as "the Strange defendants"). In the complaint, the IAFF plaintiffs challenged the Act on the same constitutional grounds asserted by the AEA plaintiffs.

On May 20, 2011, the district court in the second action issued a preliminary injunction enjoining the Strange defendants, with the exception of Governor Bentley,[9] from

---

[8]See supra note 4.

[9]With regard to Governor Bentley, the district court stated:

"Governor Bentley raises some potentially valid arguments that this court does not have subject matter jurisdiction over the claims that plaintiffs

10

1110413

enforcing the Act. The Strange defendants appealed the district court's issuance of the preliminary injunction to the United States Court of Appeals for the Eleventh Circuit; that court consolidated the Strange defendants' appeal with the Newton defendants' appeal.

On December 23, 2011, the Eleventh Circuit Court of Appeals narrowed the scope of the preliminary injunctions entered by the district court, stating, in relevant part:

> "[W]e believe it is appropriate to narrow the district court's injunction in the interim. In its memorandum opinion, the district court issued a preliminary injunction barring the Act's enforcement in toto. However, a state's restriction on payroll deductions for organizations engaged in electioneering activities would likely be found constitutional under Ysursa [v. Pocatello Education Ass'n, 555 U.S. 353 (2009)]. To the extent the state

---

> assert against him. It would be inappropriate to enter an injunction requiring Governor Bentley to act, or to refrain from acting, when subject matter jurisdiction over plaintiffs' claims against the Governor is uncertain. Accordingly, the preliminary injunction that will be entered contemporaneously herewith will restrain the conduct of all defendants except Governor Bentley. If the court later determines that it does have subject matter jurisdiction over the claims against Governor Bentley, the injunction will be extended to apply to him."

Alabama Educ. Ass'n v. Bentley, 788 F. Supp. 2d 1283, 1287 n. 1 (N.D. Ala. 2011).

11

1110413

limits its enforcement of the Act in this way, it may proceed. The preliminary injunction remains in place as to enforcement that extends beyond that range of conduct."

Alabama Educ. Ass'n v. State Superintendent of Educ., 665 F.3d 1234, 1239 (11th Cir. 2011).

In the same opinion, the Eleventh Circuit Court of Appeals stated:

"Thus, the question before this court in the present case turns entirely on how the Act is interpreted. If it is meant only to reach payroll deductions for organizations engaged in electioneering activities ..., then it presents no constitutional problems. A statute with a broader reach may implicate First Amendment concerns .... It has long been our practice that '[s]ubstantial doubt about a question of state law upon which a particular case turns should be resolved by certifying the question to the state supreme court.' Jones v. Dillard's, Inc., 331 F.3d 1259, 1268 (11th Cir. 2003) (citing Moreno v. Nationwide Insur. Co., 105 F.3d 1358, 1360 (11th Cir. 1997)). There is a high likelihood that the Supreme Court of Alabama's interpretation of the Act will resolve this matter; therefore, the state courts should have the opportunity to address this issue in the first instance, particularly since it is one so closely tied to statewide political reforms. We conclude sufficient cause exists to certify a question to the Alabama Supreme Court with respect to the scope of the Act."

Alabama Educ. Ass'n, 665 F.3d at 1238 (footnote omitted).

12

1110413

The Eleventh Circuit Court of Appeals certified to this Court the following questions regarding the scope of the Act:[10]

> "1. Is the 'or otherwise' language in the [Act] limited to the use of state mechanisms to support political organizations, or does it cover all contributions by state employees to political organizations, regardless of the source?
>
> "2. Does the term 'political activity' refer only to electioneering activities?"

Alabama Educ. Ass'n, 665 F.3d at 1238.

The parties have filed thorough, well written briefs on the certified questions, see Rule 18(g), Ala. R. App. P., and this Court heard oral argument on October 1, 2012, see Rule 18(h), Ala. R. App. P.

## II. Rules of Statutory Construction

---

[10]Rule 18(a), Ala. R. App. P., provides:

"When it shall appear to a court of the United States that there are involved in any proceeding before it questions or propositions of law of this State which are determinative of said cause and that there are no clear controlling precedents in the decisions of the Supreme Court of this State, such federal court may certify such questions or propositions of law of this State to the Supreme Court of Alabama for instructions concerning such questions or propositions of state law, which certified question the Supreme Court of this State, by written opinion, may answer."

13

1110413

The certified questions in this matter require us to determine the scope of certain provisions of the Act; thus, we are mindful of the well settled rules of statutory construction.

> "'"'It is this Court's responsibility to give effect to the legislative intent whenever that intent is manifested. State v. Union Tank Car Co., 281 Ala. 246, 248, 201 So. 2d 402, 403 (1967). When interpreting a statute, this Court must read the statute as a whole because statutory language depends on context; we will presume that the Legislature knew the meaning of the words it used when it enacted the statute. Ex parte Jackson, 614 So. 2d 405, 406-07 (Ala. 1993). Additionally, when a term is not defined in a statute, the commonly accepted definition of the term should be applied. Republic Steel Corp. v. Horn, 268 Ala. 279, 281, 105 So. 2d 446, 447 (1958). Furthermore, we must give the words in a

14

1110413

statute their plain, ordinary, and commonly understood meaning, and where plain language is used we must interpret it to mean exactly what it says. Ex parte Shelby County Health Care Auth., 850 So. 2d 332 (Ala. 2002).'

"'"Bean Dredging, L.L.C. v. Alabama Dep't of Revenue, 855 So. 2d 513, 517 (Ala. 2003). In addition, '"'"[t]here is a presumption that every word, sentence, or provision [of a statute] was intended for some useful purpose, has some force and effect, and that some effect is to be given to each, and also that no superfluous words or provisions were used."'"' Surtees v. VFJ Ventures, Inc., 8 So. 3d 950, 970 (Ala. Civ. App. 2008) (quoting Ex parte Uniroyal Tire Co., 779 So. 2d 227, 236 (Ala. 2000), quoting in turn other cases)."

"'IEC Arab Alabama, Inc. v. City of Arab, 7 So. 3d 370, 375 (Ala. Civ. App. 2008).'

"Green Tree-AL LLC v. Dominion Res., L.L.C., 104 So. 3d 177, 179-80 (Ala. Civ. App. 2011)."

AltaPointe Health Sys., Inc. v. Davis, 90 So. 3d 139, 157 (Ala. 2012).

III. Discussion

15

1110413

A. Certified Question #1

"Is the 'or otherwise' language in the [Act] limited
to the use of state mechanisms to support political
organizations, or does it cover all contributions by
state employees to political organizations,
regardless of the source?"

The portion of the Act relevant to this question provides:

"No person in the employment of the State of
Alabama, a county, a city, a local school board, or
any other governmental agency may arrange by salary
deduction or otherwise for any payments to a
political action committee or arrange by salary
deduction or otherwise for any payments for the dues
of any person so employed to a membership
organization which uses any portion of the dues for
political activity. ..."

§ 17-17-5(b)(1), Ala. Code 1975 (emphasis added).

The AEA plaintiffs, the IAFF plaintiffs, and amici curiae
Alabama State Employees Association ("the ASEA") and its
political-action committee ("SEA-PAC") (hereinafter referred
to collectively as "the plaintiff groups") argue, in sum, that
the "or otherwise" language in the Act is overbroad and that
it can be read to prohibit a State employee from paying dues
to organizations such as the AEA or from making donations to
a political-action committee, even if the State is not
involved in facilitating those payments in any manner.

16

1110413

Conversely, the Newton defendants and the Strange defendants (hereinafter referred to collectively as "the defendant groups") argue that the Act may be read to prohibit only State facilitation of payments to organizations such as the AEA and State facilitation of donations to a political-action committee, and, thus, they say, the members of such organizations are free to make payments or donations by private means.

Viewing the language in question in the context of the entire Act leads us to conclude that the Act is meant to prohibit only the use of State mechanisms to support political organizations. We reach this conclusion for the following reasons.

First, we note that in subsection (b) the Act states that groups wishing to utilize payroll deductions must certify that they are not engaging in "political activities." Specifically, the Act states:

> "Any organization that requests the State of Alabama, a county, a city, a local school board, or any other governmental agency to arrange by salary deduction or otherwise for the collection of membership dues of persons employed by the State of Alabama a county, a city, a local school board, or any other governmental agency shall certify to the appropriate governmental entity that none of the

17

1110413

> membership dues will be used for political
> activity."

§ 17-17-5(b)(2), Ala. Code 1975. The above-quoted language is clear in showing that the government, i.e., "the State of Alabama, a county, a city, a local school board, or any other governmental agency," must be involved in arranging for the payment of the State employee's membership dues for the Act to apply; therefore, private forms of payment, i.e., forms of payment not facilitated by the government, are not prohibited.

Also, it is noteworthy that the penalties for violating the Act apply only to the organization to which the dues or payments are made and only when the dues or payments are facilitated by the State. Specifically, the Act states:

> "Any organization that fails to provide the required
> certifications [stating that none of the membership
> dues will be used for political activity], that
> reports any expenditures for political activity, or
> that files false information about political
> activity in any of its reports shall be permanently
> barred from arranging for the collection of its
> membership dues by any governmental entity."

§ 17-17-5(b)(2), Ala. Code 1975 (emphasis added).

Furthermore, prior decisions of this Court show that the phrase "or otherwise" should not to be interpreted as creating an essentially unlimited prohibition against State employees'

18

1110413

arranging for payments to organizations engaged in political activity. Instead, our prior decisions show that the general phrase "or otherwise" should be interpreted as referring only to other matters similar to those specifically stated in the statute being construed, which, in this case, is a "salary deduction." Put differently, we are required to find that the term "or otherwise" refers not to any manner of payment to organizations engaged in political activity but, instead, refers to any manner of payment to such organizations that is in the nature of a salary deduction. See, e.g., Snider v. Wood, 531 So. 2d 864, 866-67 (Ala. 1988) (concluding that the phrase "needed to pay taxes or otherwise" meant "to pay taxes or other similar expenses" and noting that, under the rule of ejusdem generis, "general words are not to be construed in their widest extent, but are to be held as applying only to persons or things of the same general kind or class as those specifically mentioned"); Foster v. Dickinson, 293 Ala. 298, 300, 302 So. 2d 111, 113 (1974) ("The words, 'or otherwise' in law when used as a general phrase following an enumeration of particulars are commonly interpreted in a restricted sense as referring to such other matters as are kindred to the classes

19

1110413

before mentioned, receiving ejusdem generis interpretation." (citing Goode v. Tyler, 237 Ala. 106, 186 So. 129 (1939), and State v. Tyler, 100 Fla. 1112, 130 So. 721 (1930))); and Amos v. State, 73 Ala. 498 (1883) ("The more general words, or otherwise dispose of, following the more specific or particular words, sell, or give away, upon a settled rule of statutory construction, a larger legislative intention not being clearly expressed, must be construed as extending only to a disposition ejusdem generis with a sale or a gift; they are not to be extended to any and every act which may be said to be a disposition.").

As stated above, "[w]hen interpreting a statute, this Court must read the statute as a whole because statutory language depends on context." Davis, 90 So. 3d at 157. Having considered the Act as a whole, we conclude that the Act is meant to prohibit only mechanisms on the part of the State to make payments to political-action committees and membership organizations that use any portion of their members' dues for political activity; the Act is not meant to prohibit members of such organizations from making payments to those organizations by other mechanisms. Therefore, for purposes of

1110413

the Act, the phrase "or otherwise" refers to the manner of payment of membership dues to organizations contemplated by the Act <u>only</u> if those payments are <u>processed by the State in a manner similar to a salary deduction</u>.

B. Certified Question #2

"Does the term 'political activity' refer only to electioneering activities?"

As an initial matter, we note that we cannot determine whether the term "political activity" -- which we define herein "[f]or purposes of <u>this subsection</u> only," <u>see</u> § 17-17-5(b)(1) -- refers to only "electioneering activities" without first understanding the meaning of the term "electioneering," which has not been defined by our legislature. <u>The Oxford English Dictionary</u> defines "electioneering" as follows: "The art or practice of managing elections; canvassing on behalf of candidates for membership in representative assemblies." V <u>The Oxford English Dictionary</u> 117 (2d ed. 1989). From the foregoing we may understand electioneering activities to include only those activities that involve working on behalf of or in opposition to candidates for elected offices.

On this issue, the plaintiff groups argue, in sum, that the term "political activity" is unconstitutionally vague and

21

1110413

thus establishes an impermissibly expansive reach of the Act. More specifically, the plaintiffs' groups argue, among other things, that

> "[t]he Legislature's extensive list of the seven types of 'political activity' to which subsection (b) applies -- and its repeated use of maximalist phrases such as 'any entity which engages in any form of political communication,' 'any form of political communication,' 'any type of political advertising,' 'phone calling for any political purpose,' and 'political literature of any type' -- all establish an expansive reach for the statute, the boundaries of which are unclear."

AEA plaintiffs' brief, at 29; see also IAFF plaintiffs' brief, at 25, and brief of amici curiae, at 24-25.  The plaintiff groups further argue that six of the seven categories to which "political activity" is limited as set forth in subsection (b)(1)a.-g. are vague because, they say, those six categories "depend, in a circular fashion, on the undefined adjective 'political.'"  AEA plaintiffs' brief, at 30; see also IAFF plaintiffs' brief, at 23-24.[11]  Conversely, the defendant groups argue that the term "political activity" as used in the

---

[11]The ASEA and SEA-PAC argue that "[t]he word 'political' itself includes both forms of advocacy[, issue advocacy and candidate advocacy]."  Brief of amici curiae, at 23 (citing the definition of the word "political" as set forth in Black's Law Dictionary 1158 (6th ed. 1991)).

22

1110413

Act is limited to electioneering activities, i.e., working on behalf of or in opposition to a candidate for elected office.

As noted, the plaintiff groups contend that the language of the Act is overly broad because, they say, six of the seven categories of political activity set forth in subsection (b)(1)a.-g. are, in part, defined by the word "political," which itself is not defined by the Act. The IAFF plaintiffs contend:

> "With a single exception, all of these definitions [of political activity] reference, in a confusing and circular fashion, the otherwise undefined adjective 'political.' The borders of the term 'political' are inherently uncertain because it can apply not only to partisan activities concerning the election or defeat of specific candidates for political office, but also to communications concerning other matters of public significance -- including issues of national and local importance such as school and public safety funding, training for public safety officers, or the policies of school officials."

IAFF plaintiffs' brief, at 24 (footnote omitted). The AEA plaintiffs' present a very similar argument, contending:

> "The lack of clarity in the definition of 'political activity' is exacerbated by the fact that all but one of the subparts of this definition depend, in a circular fashion, on the undefined adjective 'political' (and the one that does not -- the portion referring to 'public opinion polling' -- has its own special uncertainties ...)."

23

1110413

AEA plaintiffs' brief, at 30.

Before examining the seven specific forms of expression or activity listed in paragraphs a. though g. of subsection (b)(1), we note that they are preceded by this statement of the general rule:

> "No person in the employment of the State ... may ... arrange by salary deduction or otherwise for any payments for the dues of any person so employed to a membership organization which uses any portion of the dues for <u>political</u> activity."

(Emphasis added.) It is this "lead-in" language that describes the substantive field -- the field of "political" activity -- within which the subsequently listed forms of expression are pertinent.

The ASEA and SEA-PAC correctly note that the word "political" has a rather expansive definition in its legal usage. <u>See</u> brief of amici curiae, at 23-24. The word "political" has been defined as follows:

> "Pertaining to or relating to the policy or the administration of government, state or national. Pertaining to, or incidental to, the exercise of the functions vested in those charged with the conduct of government; relating to the management of affairs of state, as political theories; of or pertaining to exercise of rights and privileges or the influence by which individuals of a state seek to determine or control its public policy; having to do with organization or action of individuals, parties, or

24

1110413

interests that seek to control appointment or action of those who manage affairs of a state."

Black's Law Dictionary 1158-59 (6th ed. 1990).[12]

Thus, the term "political activity," which precedes the list of seven categories, embraces more than electioneering.[13]

_____

[12]Although Black's Law Dictionary is not binding legal authority, see, e.g., State v. Knoechel (No. CA84-10-074, March 11, 1985) (Ohio Ct. App. 1985) (not reported in N.E.2d or Ohio App.), it has been referred to as "a well-accepted, highly utilized, and much respected legal dictionary." Heindlmeyer v. Ottawa Cnty. Concealed Weapons Licensing Bd., 268 Mich. App. 202, 221, 707 N.W.2d 353, 364 (2005). See also Mabry v. Superior Court, 185 Cal. App. 4th 208, 233, 110 Cal.Rptr.3d 201, 220 (2010) (referring to Black's Law Dictionary as "venerable"), and Blue Diamond, Inc. v. Liberty Mut. Ins. Co., 21 F.Supp.2d 631, 636 (S.D. Miss. 1998) (same).

[13]The Chief Justice's special writing finds that the language of Ala. Code 1975, § 17-1-4, provides the definition of "political activity," i.e., "endorsing candidates and contributing to campaigns," and that the word "including," which immediately precedes the phrase "endorsing candidates and contributing to campaigns" in § 17-1-4, actually "restricts" any other like things that are not listed thereafter. However, 2A Norman J. Singer and J.D. Shambie Singer Statutes and Statutory Construction § 47:23 (7th ed. 2007), states: "When 'include' is utilized, it is generally improper to conclude that entities not specifically enumerated are excluded." Additionally, the United States Court of Appeals for the District of Columbia Circuit has stated that "[i]t is hornbook law that the word 'including' indicates that the specified list ... that follows is illustrative, not exclusive." Puerto Rico Maritime Shipping Auth. v. I.C.C., 645 F.2d 1102, 1112 n. 26 (D.C. Cir. 1981) (quoted in Bryan A. Garner, Garner's Dictionary of Legal Usage 439 (3d ed. 2011)). Furthermore, this Court has explained "that the word '"including" is not to be regarded as limitational or restrictive, but merely as a particular specification of

25

1110413

Nor can the language in six of the seven categories to which political activity is limited as set forth in subsection (b)(1) be understood as inconsistent with this conclusion. We note first subparagraphs a. and c., both of which facially encompass more than mere candidate-based advocacy:

> "a. Making contributions to or contracting with any entity which engages in any form of political communication, including communications which mention the name of a political candidate."

---

something to be included or to constitute a part of some other thing.'" Southeastern Meats of Pelham, Inc. v. City of Birmingham, 895 So. 2d 909, 913 (Ala. 2004) (quoting Sims v. Moore, 288 Ala. 630, 635, 264 So. 2d 484, 487 (1972)). Moreover, in Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 132 (2012), it is explained that

> "[i]n normal English usage, if a group 'consists of' or 'comprises' 300 lawyers, it contains precisely that number.  If it 'includes' 300 lawyers, there may well be thousands of other members from all walks of life as well.  That is, the word include does not ordinarily introduce an exhaustive list....  That is the rule both in good English usage and in textualist decision-making. Some jurisdictions have even codified a rule about include."

(Footnotes omitted; emphasis in original.)  Therefore, although "endorsing candidates and contributing to campaigns" can fairly be said to fall within the meaning of "political activity," those activities do not define or limit the full reach of "political activity" as it used in the Act.

26

1110413

"c. Engaging in or paying for any form of political communication, including communications which mention the name of a political candidate."

By their plain language, subparagraphs a. and c. define political activity, within the context of "political communication," as "including," but not limited to, "communications which mention the name of a political candidate." Stated differently, subparagraphs a. and c. may be read as defining political activity to include "[m]aking contributions to or contracting with any entity which engages in any form of political communication," including political communication that is not in the form of candidate-based advocacy, and "[e]ngaging in or paying for any form of political communication," again including political communication that is not in the form of candidate-based advocacy. These two subparagraphs cannot be read as limiting political activity to only electioneering activities.

Furthermore, subparagraph b., which defines political activity as "[e]ngaging in or paying for public opinion polling," cannot be read as encompassing only electioneering activities. Suffice it to say, without any qualifying language, "public opinion polling" could be understood to

27

1110413

include polling on issues other than candidate-based advocacy. Subparagraph d., which defines political activity as "[e]ngaging in or paying for any type of political advertising in any medium," also cannot be read as encompassing only electioneering activities. "Political advertising" may take many forms beyond candidate-based advocacy, including, for example, advertising that encourages people to vote for or against a proposed constitutional amendment. Similarly, subparagraph e., which defines political activity as "[p]hone calling for any political purpose," goes beyond electioneering activities in that "any political purpose" could include the example just presented: telephone calling to encourage people to vote for or against a proposed constitutional amendment. In like manner to subparagraphs d. and e., subparagraph f., which defines political activity as "[d]istributing political literature of any type," goes beyond the reach of electioneering activities in that "political literature of any type" could include literature encouraging people to vote for or against a proposed constitutional amendment.[14]

---

[14]Subparagraph g., which defines political activity as "[p]roviding any type of in-kind help or support to or for a political candidate," appears to be the only category of political activity in subsection (b)(1)a.-g. that encompasses

28

1110413

Based on the foregoing, we conclude that the term "political activity," as used in the Act, is not limited to activity on behalf of or in opposition to candidates for elected offices, i.e., electioneering activities. Put simply, the plain language of subsection (b)(1)a.-f. describes political activity in terms that cannot be understood to limit that activity to electioneering activity.[15]

## IV. Conclusion

We answer the first certified question in the affirmative and the second in the negative. Our answers to the questions certified to this Court may be summarized as follows:

1. The "or otherwise" language in the Act is limited to the use of State mechanisms to make payments to organizations that use at least some portion of those payments for political activity.

2. The term "political activity" is not limited to electioneering activities, i.e., activities undertaken in support of candidates for elected offices.

_____

only electioneering activity.

[15]As to the political activity described in subparagraph g., see supra note 14.

29

1110413

We reiterate that our construction of the term "political activity" applies <u>only</u> as that term is used and <u>expressly</u> "<u>limited</u>" in subsection (b)(1) of the Act, and this construction of the term "political activity" is not intended to be applied beyond the narrow "limited" parameters of subsection (b)(1).

QUESTIONS ANSWERED.

Stuart, Wise, and Bryan, JJ., concur.

Murdock, J., concurs specially.

Shaw, J., concurs in the result.

Moore, C.J., and Bolin, J., concur in part and dissent in part.

Main, J., recuses himself.

1110413

MURDOCK, Justice (concurring specially).

I concur in the main opinion. In his special writing dissenting from our answer to the second certified question before us, the Chief Justice argues that our construction of § 17-17-5, Ala. Code 1975, should be altered based on the rule of statutory construction that, under certain circumstances, disfavors interpretations of statutes that will make them unconstitutional. ___ So. 3d at ___. I cannot agree that we should alter our construction of § 17-17-5 on this ground.

The statute at issue in Ysursa v. Pocatello Education Ass'n, 555 U.S. 353 (2009), cited by the Chief Justice in note 16, prohibited payroll deductions for "political activities," which it defined as "'electoral activities, independent expenditures, or expenditures made to any candidate, political party, political action committee or political issues committee or in support of or against any ballot measure.'" 555 U.S. at 356 (quoting Idaho Code § 44-2602(1)(e) (emphasis added)). The United States Supreme Court held that this restriction did not infringe upon the First Amendment, free-speech rights of the Pocatello Education Association. See Ysursa, 555 U.S. at 358-59. Moreover, in reaching this

31

1110413

holding, the Supreme Court employed the following general rationale that would appear fully applicable to the statute at issue here and the "political activity" with which it is concerned:

> "While in some contexts the government must accommodate expression, it is not required to assist others in funding the expression of particular ideas, including political ones. '[A] legislature's decision not to subsidize the exercise of a fundamental right does not infringe the right, and thus is not subject to strict scrutiny.' Regan v. Taxation With Representation of Wash., 461 U.S. 540, 549 (1983) ....
>
> "... While publicly administered payroll deductions for political purposes can enhance the unions' exercise of First Amendment rights, Idaho is under no obligation to aid the unions in their political activities. And the State's decision not to do so is not an abridgment of the unions' speech; they are free to engage in such speech as they see fit. They simply are barred from enlisting the State in support of that endeavor."

555 U.S. at 358 (citation omitted).

Even if the other circumstances for the application of the rule of construction advanced by the Chief Justice were present here, I see no basis for applying that rule in this case.

32

1110413

SHAW, Justice (concurring in the result).

I concur only with the main opinion's summation of the answers to the certified questions regarding Ala. Code 1975, § 17-17-5:

> "1. The 'or otherwise' language in the Act is limited to the use of State mechanisms to make payments to organizations that use at least some portion of those payments for political activity.
>
> "2. The term 'political activity' is not limited to electioneering activities, i.e., activities undertaken in support of candidates for elected offices."

___ So. 3d at ___.  I write specially to note the following regarding the second question and the State's argument regarding that question.

The definition of "political activity" in Ala. Code 1975, § 17-17-5, is much broader than simple electioneering.  For example, it is defined generally as "[e]ngaging in ... any form of political communication."  § 17-17-5(b)(1)c.  This language on its face is broad and is not limited to electioneering.  The definition then notes that this general definition includes the specific example of electioneering-type communications: "including communications which mention the name of a political candidate."

33

1110413

If "political activity" encompassed only electioneering, then the general definition--"any form of political communication"--is superfluous, because the subsequent specific example would be the only form of communication forbidden. In other words, why would § 17-17-5(b)(1)c, state that "any form of political communication" is political activity if its true scope was more limited, and it forbade only the electioneering activity given in the example of what is "included," i.e., "communications which mention the name of a political candidate [electioneering communications]." The general definition of "political activity" is no definition at all if it is limited to only what it stated was "included" as part of the definition.

Other definitions provided in § 17-17-5(b)(1) also appear broader than mere electioneering. Subsection a. includes as political activity contributing to or contracting with "any entity" engaged in "any form" of political communication. Subsection b. includes "public opinion polling," which reaches far beyond electioneering. The subsections go on to define "political activity" as engaging in "any" type of political advertising, telephone calling for "any political purpose,"

34

1110413

and distributing political literature of "any type." These on their face are clearly not activities that are limited to electioneering. To the contrary, it appears that the Code section encompasses not only activities that can be characterized as electioneering, but also activities that can be characterized as "issue based" or "issue driven."

The State cites an attorney general opinion, Op. Att'y Gen. No. 2003-232 (August 28, 2003), that purportedly defines "political activity" or at least allegedly assists in determining the proper definition. That opinion relied on this Court's decision in Hudson v. Gray, 285 Ala. 546, 234 So. 2d 564 (1970). However, I believe that such reliance was misplaced. Specifically, Hudson involved a declaratory-judgment action seeking the determination whether an uncodified local act prohibited certain Birmingham city employees from taking part in "any Political campaign." The applicable portion of the law being construed, Act No. 248, Ala. Acts 1945, § 25 at p. 399, found in Vol. 14, Appx., § 669, Ala. Code 1940 (Recomp. 1958), provided that "[n]o employee shall be a member of any national, state, or local committee of a political party, or an officer of a partisan

35

1110413

political club, or a candidate for nomination or election to any public office, or shall take any part in the management or affairs of any political party or in any political campaign." It does not use the phrase "political activity," which phrase appears only in the title of the Code section. The employees wished to petition the city by an initiative under Title 62, § 636, Ala. Code 1940 (Recomp. 1958), but were advised that such activity would violate § 669. This Court attempted to harmonize § 636 and § 669 as follows: "[W]e think it compatible with the operation of both statutes to conclude that circulating and filing the petition as a condition precedent to engaging the power of initiative action is not to be construed as political activity or taking part in a political campaign under the civil service law, § 669 ...." 285 Ala. at 549, 234 So. 2d at 566-67 (citations omitted).

Hudson's extrapolation of the phrase "political activity" is defined in the context of "the civil service law, § 669." Essentially, the Court was using the term "political activity" as a synonym for "political campaign," the term actually used in § 669. Hudson was not providing a general definition of the term "political activity." Thus, I see little support in

36

1110413

<u>Hudson</u> for the State's suggested definition of "political activity" found in § 17-17-5.

1110413

MOORE, Chief Justice (concurring in part and dissenting in part).

We have a duty to give a statute a construction "that will sustain its validity if reasonably possible." Pruett v. Patton, 288 Ala. 710, 714, 265 So. 2d 130, 133 (1972). In answering the second certified question from the United States Court of Appeals for the Eleventh Circuit, the majority interprets "political activity" as that term is used in § 17-17-5, Ala. Code 1975, as not being limited to electioneering activity. However, I believe that the only reasonable interpretation, as set out below, is that the term "political activity" as used in § 17-17-5, in keeping with its usage in the rest of the Code, refers only to electioneering activity. If a statute is reasonably subject to two different constructions (which this one is not), we are duty-bound to select the one that will uphold its constitutionality. Alabama State Fed'n of Labor v. McAdory, 246 Ala. 1, 10, 18 So. 2d 810, 815 (1944). We cannot abandon this duty simply because

38

1110413

the determination of this ultimate issue resides with the tribunal certifying the question.[16]

Because the majority does not conduct its analysis against the background of this governing principle, it provides an answer to the second certified question that we ourselves would likely not provide were the question of the constitutionality of the statute before us on appeal. I believe, therefore, that by failing to apply the rule of construction we ourselves would employ were the constitutional challenge before us, we have provided the Eleventh Circuit Court of Appeals an incomplete and misleading answer.

If the majority feels that it is bound to answer the second certified question without considering the principle that a statute is to be construed in favor of constitutionality where possible, I believe it would more

---

[16]The United States Court of Appeals for the Eleventh Circuit framed the second certified question as a constitutional issue, holding that the term "political activity" in § 17-17-5(b)(1), Ala. Code 1975, "presents no constitutional problems" if limited to electoral activities in support of candidates, political parties, or ballot measures. Alabama Educ. Ass'n v. State Superintendent of Educ., 665 F.3d 1234, 1238 & n.1 (11th Cir. 2011) (citing Ysursa v. Pocatello Educ. Ass'n, 555 U.S. 353, 356 (2009)).

39

1110413

adequately assist the Eleventh Circuit by declining to answer the certified questions.

I agree with the main opinion that the "or otherwise" phrase in § 17-17-5(b)(1), Ala. Code 1975, is limited to the use of mechanisms of the State to support political organizations. I therefore concur in the affirmative answer to the first certified question. However, I believe that "political activity" in the Election Code means "electioneering." I would hold that words used in the Election Code refer to <u>elections</u>, whether for candidates, ballot measures, or political parties. I also believe that this reasonable interpretation of the term "political activity" should govern the answer we provide the Eleventh Circuit under our duty to construe a statute in favor of constitutionality where possible. Therefore, I dissent as to the negative answer to the second certified question.

## I. Defining "Political Activity"

Section 17-17-5(b)(1), Ala. Code 1975, prohibits government-employee salary deductions for any payment of dues to "a membership organization which uses any portion of the dues for political activity." The statute further provides:

40

1110413

> "For purposes of this subsection only, <u>political activity shall be limited to all of the following</u>:
>
>> "a. Making contributions to or contracting with any entity which engages in any form of political communication, including communications which mention the name of a political candidate.
>>
>> "b. Engaging in or paying for public opinion polling.
>>
>> "c. Engaging in or paying for any form of political communication, including communications which mention the name of a political candidate.
>>
>> "d. Engaging in or paying for any type of political advertising in any medium.
>>
>> "e. Phone calling for any political purpose.
>>
>> "f. Distributing political literature of any type.
>>
>> "g. Providing any type of in-kind help or support to or for a political candidate."

(Emphasis added.)

The plaintiff groups argue that the statute defines "political activity" in seven subparagraphs and that those definitions are much broader than mere electioneering activity. For instance, they argue that "public opinion polling" in subparagraph b. has a much broader scope than

41

1110413

polling that is only election-related and that "political communications" in subparagraph c. encompass more than candidate advocacy. Further, they argue that the failure of the statute to define the term "political" creates a fatal vagueness.

The statute, however, does not say that political activity is "<u>defined</u> as all of the following." Instead, it says that political activity "<u>shall be limited to</u> all of the following." Because subsection (b)(1) does not define the scope of the term "political activity," but instead limits it, the actual meaning of "political activity" (before being so limited) must be found elsewhere.

## A. The Election Code Context

Although the word "political," standing alone, refers to government in general,[17] in the context of the Election Code the word is limited to election-related matters. "[W]hat the Legislature intends by the use of a particular word or phrase is to be determined, not merely by the ordinary meaning of the word, but also by its context." <u>Brown v. Protective Life Ins.</u>

---

[17]See <u>Black's Law Dictionary</u> 1276 (9th ed. 2009) (defining "political" as "[p]ertaining to politics; of or relating to the conduct of government").

42

1110413

Co., 188 Ala. 166, 175, 66 So. 47, 49 (1914). See also Brock v. City of Anniston, 244 Ala. 544, 549, 14 So. 2d 519, 523 (1943) (noting that the meaning of the words in a statute are to be construed within the context of the statute). Thus, in construing the meaning of the term "political activity" in § 17-17-5, we reasonably look to the rest of the Election Code for guidance. See Darks Dairy, Inc. v. Alabama Dairy Comm'n, 367 So. 2d 1378, 1380 (Ala. 1979) (noting that, in ascertaining legislative intent, "we must look to the entire Act instead of isolated phrases or clauses"). See also United States v. Morton, 467 U.S. 822, 828 (1984) ("We do not ... construe statutory phrases in isolation; we read statutes as a whole.").

Section 17-1-4 of the Election Code states that "political activities" include "endorsing candidates and contributing to campaigns." "[W]hen specific words follow general words" in a statute, "the general words are construed to embrace only objects similar to those objects enumerated by the specific words." Ex parte Cobb, 703 So. 2d 871, 875 (Ala. 1996). This application mirrors the ejusdem generis principle, employed by the majority in analyzing the first certified

43

1110413

question -- that specific words limit the general terms that follow them. See id. ("This rule is equally applicable when specific words follow general words ...."). Because the explanatory phrase "endorsing candidates and contributing to campaigns" restricts the class of objects that constitutes "political activities" in § 17-1-4, the same definition should carry over to § 17-17-5(b)(1). Thus, the seven descriptive subcategories of "political activity" in § 17-17-5(b)(1) would ordinarily be reasonably construed to refer only to election-related activities: "public opinion polling" in § 17-17-5(b)(1)b. would refer to election-related polling; "political communications" in § 17-17-5(b)(1)c. would refer to communications related to elections, whether concerning voting on candidates or ballot measures.

However, the use of the connector "including" alters the analysis. As stated in § 17-1-4(a), no city, county, or state employee "shall be denied the right to participate in city, county, or state political activities to the same extent as any other citizen of the State of Alabama, including endorsing candidates and contributing to campaigns of his or her choosing." (Emphasis added.) The specific terms that follow

44

1110413

"including," unlike the usual application of the _ejusdem_ _generis_ doctrine, do not necessarily restrict the class of objects embraced by the general term. Instead they typically illustrate or provide examples of the meaning of the general term. "'In construing a statute, the use of a form of the word "include" is significant, and generally thought to imply that terms listed immediately afterwards are an inexhaustive list of examples, rather than a bounded set of applicable items.'" _State ex rel. Riley v. Lorillard Tobacco Co._, 1 So. 3d 1, 12 (Ala. 2008) (quoting _In re Mark Anthony Constr., Inc._, 886 F.2d 1101, 1106 (9th Cir. 1989)). See also _Federal Land Bank of St. Paul v. Bismarck Lumber Co._, 314 U.S. 95, 100 (1941) (noting that "the term 'including' is not one of all-embracing definition, but connotes simply an illustrative application of the general principle"); _Stansell v. Revolutionary Armed Forces of Columbia_, 704 F.3d 910, 915 (11th Cir. 2013) (noting that the term "'includes' is merely illustrative").

Nonetheless, without claiming that the election-related terms that describe "political activities" in § 17-1-4 are exhaustive of the meaning of that term, one must still admit their probative force in explaining that meaning. In _Samantur_

45

1110413

v. Yousuf, 560 U.S. 305, ___, 130 S. Ct. 2278, 2286 (2010), the Supreme Court construed the following definition: "A 'foreign state' ... includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state ...." 28 U.S.C. § 1603(a). Responding to the argument that the terms following "including" in the statute were not exhaustive of its meaning and could thus also include individual government officials, the Court agreed that "the use of the word 'include' can signal that the list that follows is meant to be illustrative rather than exhaustive." 560 U.S. at ___, 130 S. Ct. at 2287.

> "But even if the list in § 1603(a) is merely illustrative, it still suggests that 'foreign state' does not encompass officials, because the types of defendants listed are all entities. See Russell Motor Car Co. v. United States, 261 U.S. 514, 519, 58 Ct. Cl. 708, 43 S. Ct. 428, 67 L. Ed. 778 (1923) ('[A] word may be known by the company it keeps')."

560 U.S. at ___, 130 S. Ct. at 2287-88. Similarly, even if the description of the term "political activities" in § 17-1-4 as "endorsing candidates and contributing to campaigns" is merely illustrative, it still suggests that the term "political activities" does not encompass non-electioneering activity. The descriptive phrases following the word "including" in §

46

1110413

17-1-4 refer exclusively to electioneering activities. "'But granting that the word "including" is a term of enlargement, it is clear that it only performs that office by introducing the specific elements constituting the enlargement.'" Application of Central Airlines, 199 Okla. 300, 303, 185 P.2d 919, 923 (1947) (quoting Blanck v. Pioneer Mining Co., 93 Wash. 26, 30, 159 P. 1077, 1079 (1916)).

As a further example, the section of the Election Code immediately preceding § 17-17-5 is entitled "Improper use of official authority or position for political activities." § 17-17-4, Ala. Code 1975 (emphasis added). This section punishes as a felon "[a]ny person who attempts to use his or her official authority or position for the purpose of influencing the vote or political action of any person." (Emphasis added.)

B. Noscitur a Sociis

Sections 17-1-4, 17-17-4, and 17-17-5(b)(1) are all included in Title 17, the Alabama Election Code. Because a word is known by the company it keeps, one would expect "political activity," when included in the Election Code, to refer to elections. "This maxim of statutory construction,

47

1110413

*noscitur a sociis*, has been embraced by this Court as an aid in construing ambiguous statutory language." *Ex parte Cobb*, 703 So. 2d at 876. See also *Winner v. Marion Cnty. Comm'n*, 415 So. 2d 1061 (Ala. 1982) (noting that general words are qualified "by associated words"); *Nettles v. Lichtman*, 228 Ala. 52, 56, 152 So. 450, 454 (1934) (noting that *noscitur a sociis* is "broader in its scope than the kindred maxim, ejusdem generis").

Section 17-1-4, which supplies a particular definition of "political activity," is in Chapter 1 ("General Provisions") of the Election Code. One would expect that general provisions apply to the Code in general. The opening section of the Election Code, apparently assuming *sub silentio* that the Code applies to statewide general elections, states that with certain exceptions: "All of the provisions of this title shall apply to all primary elections and all elections by counties or municipalities held in this state ...." § 17-1-1, Ala. Code 1975. This first section makes clear, as one would expect, that the Election Code applies to elections. By the same logic, "political activity" in the Election Code is election-related or "electioneering" activity. The seven categories of

48

1110413

"political activity" to which § 17-17-5(b)(1) limits its application are therefore all variants of election-related activity, thus eliminating the asserted vagueness and overbreadth problems. In further support of this interpretation, I note that the 28 definitions provided in § 17-1-2 all relate to elections. The absence of "political activity" from the definitions list in § 17-1-2, therefore, does not create a vagueness problem. "Political activity," like the other definitions in the Code, is understood by the canon of noscitur a sociis as election-related. Further, § 17-17-5 falls within Chapter 17 of Title 17, entitled "Election Offenses." Thus, the offenses and penalties listed therein are all election-related, including those related to government-employee payroll deductions. Where terms are "susceptible of multiple and wide-ranging meanings," "those meanings are narrowed by the commonsense canon of noscitur a sociis." United States v. Williams, 553 U.S. 285, 294 (2008).

C. In Pari Materia

Insofar as noscitur a sociis does not extend to a comparison of sections in different chapters of the same title, the principle of in pari materia applies: statutes on

49

1110413

the same subject matter should be construed together so as to harmonize them. "Statutes are in pari materia -- pertain to the same subject matter -- when they ... have the same purpose or object." 2B Norman J. Singer & J.D. Shambie Singer, Statutes and Statutory Construction § 51:3 (7th ed. 2012) ("Statutory Construction"). Sections 17-1-4 and 17-17-5, both residing in the Election Code, have the common purpose of regulating elections and thus should be construed together. "[S]tatutes relating to the same subject matter must be read in pari materia, thus allowing for legal harmony where possible." Ex parte State, 786 So. 2d 1134, 1136 (Ala. 2000). See also Locke v. Wheat, 350 So. 2d 451, 453 (Ala. 1977) ("As a general rule, such statutes [in pari materia] should be construed together to ascertain the meaning and intent of each."). Because the plaintiff groups claim that the term "political activity" in § 17-17-5, standing alone, is ambiguous, the use of the term in that section should be harmonized with its use in other parts of the Election Code. "[C]ourts generally turn to an in pari materia analysis to resolve a statutory ambiguity and to ascertain legislative intent." 2B Statutory Construction § 51:3.

50

1110413

In particular, "courts construe words or phrases from a prior act on the same subject in the same sense." 2B Statutory Construction § 51:2. Section 17-1-4, which provides a definition of "political activities," was originally enacted in 1978, Kirby v. Mobile Cnty. Comm'n, 564 So. 2d 447, 449 (Ala. Civ. App. 1990), preceding the enactment in 2006 and the revision in 2010 of § 17-17-5 by approximately 30 years. Subsection 17-17-5(b)(1) should thus be read to provide the same meaning for "political activity" as the legislature has provided in § 17-1-4. "[T]he need for uniformity becomes more imperative where the same word or term is used in different statutory sections that are similar in purpose and content ...." Commissioner of Internal Revenue v. Ridgeway's Estate, 291 F.2d 257, 259 (3d Cir. 1961). That § 17-17-5 does not specifically refer to § 17-1-4 is of no moment. "Statutes need not have been enacted simultaneously or refer to one another to be in pari materia." 2B Statutory Construction § 51:3.

D. The Larger Context

1. Statutes Outside the Election Code

Uses of the term "political activity" in other sections of the Code also reflects its limitation to electioneering

51

1110413

activities. Article 4 in Chapter 12 of Title 36 is entitled "Use of State-Owned Property for Political Purposes." The first section of Article 4 states:

> "The object and purpose of this article is to place all candidates for any state office upon an equality by the prevention of the use of any state-owned property in the promotion or advancement of the candidacy of any individual to the nomination or election to any public office of the State of Alabama."

§ 36-12-60, Ala. Code 1975. Thus, "political purposes," potentially an even broader term than "political activity," is described in § 36-12-60 as promoting or advancing a candidacy for elective office. Chapter 26 of Article 36 is entitled "State Personnel Department and Merit System." Section 36-26-38 in this chapter, entitled "Political activities prohibited," states:

> "No employee in the classified service shall be a member of any national, state or local committee of a political party or an officer of a partisan political club or a candidate for nomination or election to any public office or shall take any part in the management or affairs of any political party or in any political campaign, except on his personal time and to exercise his right as a citizen privately to express his opinion and to cast his vote ...."

This description of prohibited "political activities" includes solely election-related activity. Section 17-1-4 specifically

52

1110413

references § 36-26-38, thus incorporating these requirements into a section of the Election Code. After referring to endorsing candidates and contributing to campaigns as permitted "political activities," § 17-1-4(a)(3) states: "Notwithstanding the foregoing, any person within the classified service shall comply with Section 36-26-38."

The local laws in the Code similarly limit "political activity" to electioneering. See, e.g., § 45-11-231.11 ("Political activities"), which prohibits favoring or disfavoring employees of the Chilton County sheriff based on their support or failure to support "any candidate for political office." These non-Election Code provisions are consistent with the construction of the term "political activity" as election-related. "The court ... is entitled to look, in its effort to arrive at the intention of the Legislature, to other provisions of the same act, to consider its relation to other statutory and constitutional requirements ...." Abramson v. Hard, 229 Ala. 2, 7, 155 So. 590, 594 (1934) (emphasis added). See also Lehman, Durr & Co. v. Robinson, 59 Ala. 219, 234 (1877) ("In construing a statute, regard must be had to the whole act; and, if need be,

53

1110413

to other statutes passed on the same subject; for it frequently happens that the meaning of one clause is shown by another that is not stated in connection with it." (emphasis added)).

2. Caselaw

In Marshall County Board of Education v. State Tenure Commission, 291 Ala. 281, 280 So. 2d 130 (1973), this Court construed a statute that prohibited the transfer or discharge of tenured school teachers for "political or personal reasons." The Court construed "political reasons" to be the equivalent of a transfer or discharge for "political activity" and stated:

> "We think the political reasons the Legislature had in mind in the use of the words in these statutes were that no tenured teacher could be transferred or discharged on the ground that the teacher did not belong to the same political party that a majority of the board members belonged, or that the teacher had voted for a political opponent of the board, or that the teacher had or had not professed a political preference in any political race, or that the teacher had become a candidate for public office, or for any similar political activity we have not specifically mentioned. In short, the Board cannot indirectly punish a teacher for that teacher's political activity or that teacher's refraining from political activity."

54

1110413

291 Ala. at 286, 280 So. 2d at 133-34 (emphasis added). The Court's understanding of "political activity" in Marshall County Board of Education parallels its use in the statutes of this State, namely that "political activity" means election-related activity.

## II. The Duty to Construe a Statute in Favor of Constitutionality

In its opinion accompanying the certified questions, the Eleventh Circuit Court of Appeals stated: "If [the Act] is meant only to reach payroll deductions for organizations engaged in electioneering activities ..., then it presents no constitutional problems. A statute with a broader reach may implicate First Amendment concerns ...." Alabama Educ. Ass'n v. State Superintendent of Educ., 665 F.3d 1234, 1238 (11th Cir. 2011) (footnote omitted). Although we are answering questions only about the meaning of terms in § 17-17-5 and are not expressing an opinion on the constitutionality of that statute, our answer to the certified questions will undoubtedly affect the Eleventh Circuit's view of the statute's constitutionality. Our construction of the terms at issue, therefore, should be guided by the rule of statutory construction that we interpret a statute to sustain its

55

1110413

constitutionality where possible. "Where the validity of a statute is assailed and there are two possible interpretations, by one of which the statute would be unconstitutional and by the other would be valid, the courts should adopt the construction which would uphold it." Alabama State Fed'n of Labor v. McAdory, 246 Ala. 1, 10, 18 So. 2d 810, 815 (1944)). See also Monroe v. Harco, Inc., 762 So. 2d 828, 831 (Ala. 2000) ("We must afford the Legislature the highest degree of deference, and construe its acts as constitutional if their language so permits."); American Booksellers v. Webb, 919 F.2d 1493, 1500 (11th Cir. 1990) ("'It has long been a tenet of First Amendment law that in determining a facial challenge to a statute, if it be "readily susceptible" to a narrowing construction that would make it constitutional, it will be upheld.'" (quoting Virginia v. American Booksellers Ass'n, 484 U.S. 383, 397 (1988))).

Thus, if the language of the statute "so permits," we should interpret the term "political activity" in § 17-17-5 to avoid First Amendment problems. Faced with "two possible interpretations," we should choose the one that is consonant with the constitutionality of the statute, namely that the

56

1110413

term "political activity" in § 17-17-5 refers only to electioneering activities. Choosing among two possible interpretations the one that renders the statute constitutional effectuates legislative intent, the goal of statutory construction.

> "The legislative body is presumed to intend that legislative acts shall not violate the Constitution, and be utterly void. Any reasonable construction will be given to effectuate such intent. It is the duty of the courts to give the statute construction that will sustain its validity if reasonably possible."

Pruett v. Patton, 288 Ala. 710, 714, 265 So.2d 130, 133 (1972).

## III. Conclusion

Employing standard canons of statutory construction, I conclude that the term "political activity" in § 17-17-5(b)(1) refers to election-related or electioneering activity. Even if the term "political activity" could possibly be construed as overbroad or vague, and thus potentially to infringe protected speech, the presumption of constitutionality attending legislative enactments requires this Court to choose, among two reasonable constructions, the one that would sustain the validity of the enactment. I would therefore answer "yes" to

57

1110413

the second certified question: "Does the term 'political activity' refer only to electioneering activities?" Although I concur with the affirmative answer to the first certified question, I must, with respect, dissent from the negative answer to the second certified question.

Bolin, J., concurs.