SMITH, Justice.
 

 Angela M. Mullins, Gloria Watkins, Annette Rea, and Dawn Thorn (hereinafter collectively referred to as “the employees”) filed the underlying action in the Montgomery Circuit Court, naming as defendants the State Board of Education (“the Board”); Governor Bob Riley, in his official capacity as president of the Board; the individual members of the Board in their official capacities; Bishop State Community College; Bevill State Community College; Southern Union State Community College; and Bradley Byrne, in his official capacity as then chancellor of the Alabama Department of Postsecondary Education. The defendants appeal from the trial court’s entry of a preliminary injunction against them.
 
 See
 
 Rule 4(a)(1)(A), Ala. R.App. P. We reverse in part, dismiss the appeal in part, and remand.
 

 Facts and Procedural History
 

 This appeal is closely related to events in the underlying action described in
 
 South Alabama Skills Training Consortium v. Ford,
 
 997 So.2d 309 (Ala.Civ.App.2008).
 
 Ford
 
 involved certain State employees— including the four named plaintiffs in the present case — who worked with the North Alabama Skills Training Consortium (“the NASTC”), the Central Alabama Skills Training Consortium (“the CASTC”), and the South Alabama Skills Training Consortium (“the SASTC”) (hereinafter the NASTC, the CASTC, and the SASTC are referred to collectively as “the Consortia”).
 
 [1]
 

 The Consortia were a result of the Workforce Investment Act of 1998 (“WIA”), 29 U.S.C. § 2801 et seq„ which superseded the Job Training Partnership Act, 29 U.S.C. § 1501 et seq. As the Court of Civil Appeals explained in
 
 Ford:
 

 “The WIA provides federal funding for eligible state programs that deliver workforce education and skills training to qualifying adults and at-risk youth. For administrative purposes, the WIA system divides Alabama into three local service areas; each local service area is governed by a local workforce-investment-area board. According to the record, federal funding under the WIA flows from the United States government to the governor, then to the Alabama Department of Economic and Community Affairs (‘ADECA’), then to the local workforce-investment-area boards, and finally to workforce-training service providers within what is known under the WIA as the ‘one-stop delivery system.’ The record shows that the one-stop delivery system is a network of service providers, designated by either ADECA or the local workforce-investment-area board, that cooperate within a local workforce-investment area.
 

 “Before the enactment of the WIA, entities known respectively as the North Alabama Skills Center, the Central Alabama Skills Center, and the South Alabama Skills Center (collectively ‘the Skills Centers’) provided workforce education and skills training under the federal Job Training Partnership Act. Certain services provided by the Skills Centers were offered through a program known as ‘CareerLink.’ ... After the
 
 *93
 
 WIA was enacted, several programs offered by the Skills Centers were discontinued; however, the CareerLink program was continued under the authority of the Consortia.”
 

 997 So.2d at 315-16.
 

 Under an agreement between the Department of Postsecondary Education (“the DPE”) and the Alabama Department of Economic and Community Affairs (“ADECA”), the Consortia were created to deliver WIA-approved training programs. 997 So.2d at 317. According to a 2001 memo from the chancellor of the DPE, each of the Consortia was “operated by” a community college: the NASTC by Bevill State Community College, the CASTC by Southern Union State Community College, and the SASTC by Bishop State Community College. 997 So.2d at 317.
 

 Employees who worked with the Consortia generally were employed under annual contracts. In 2005, the employees’ contracts expired and were not renewed. 997 So.2d at 321. To challenge the nonre-newal of their contracts, the employees
 

 “filed direct appeals with the attorney general’s office, purportedly pursuant to the Fair Dismissal Act (‘FDA’), § 36-26-100 et seq., Ala.Code 1975.
 
 See
 
 § 36-26-115, Ala.Code 1975. The employees alleged that their respective employers had violated the FDA, specifically §§ 36-26-102 through -104, Ala.Code 1975, by terminating their employment without notice and a hearing.”
 

 997 So.2d at 312. The employees’ appeals were consolidated and assigned to an administrative law judge (“ALJ”). The Consortia moved to dismiss the appeals on the basis that, they contended, the employees were not governed by the Fair Dismissal Act (“FDA”), § 36-26-100 et seq., Ala. Code 1975. 997 So.2d at 312.
 

 Ultimately, the ALJ
 

 “issued a 43-page report and recommendation in which he found that the Consortia were departments within the colleges, that the employees were employed by the colleges, and that the colleges operated ‘under the control, authority, and auspices of the Alabama College System.’ The ALJ concluded that the FDA applied to the employees and that the employees had been wrongfully denied notice and hearings as to the discontinuation of their employment. The ALJ ordered as follows:
 

 “ ‘2.... [T]he actions of the two-year colleges are hereby rescinded, and the [employees] are entitled to:
 

 “ ‘a. The rights and privileges of the FDA, including their right to a hearing prior to their termination.
 

 “ ‘b. Proper notice per the FDA.
 

 “ ‘c. Reinstatement and back pay.
 

 “ ‘3. The [colleges] are hereby placed on notice that any further employment action on their part must be in full compliance with the FDA.’ ”
 

 997 So.2d at 313.
 

 The Consortia filed in the Montgomery Circuit Court petitions for a writ of certio-rari seeking review of the ALJ’s order; the circuit court denied the petitions, and the Consortia appealed. 997 So.2d at 313— 14. The Court of Civil Appeals, in a thorough analysis, held that the employees were employees of the respective community colleges and, under the particular circumstances of the case, were entitled to the protections — specifically, the notice and hearing provisions — applicable to non-probationary employees under the FDA.
 
 [2]
 
 997 So.2d at 325-29.
 

 
 *94
 
 The Court of Civil Appeals decided
 
 Ford
 
 on June 6, 2008. While the
 
 Ford
 
 case was pending, Governor Riley issued Executive Order No. 36 on October 5, 2007, which created the Governor’s Office of Workforce Development in an effort to “consolidat[e] ... the administration of federal and state workforce development activities.” Exec. Order No. 36 (Oct. 5, 2007). The order also created the State Workforce Planning Council (“the Planning Council”) to “develop, administer, and coordinate the implementation of a comprehensive State Plan for Workforce Development to be approved by the Governor with input from the State Workforce Investment Act (WIA) Board,” and it consolidated in the Office of Workforce Development all “powers, duties, rights and responsibilities” relating to workforce development and training under the WIA and otherwise.
 
 [3]
 

 Id.
 

 Executive Order No. 36 directs the Office of Workforce Development to cooperate fully with the DPE. The DPE, according to the evidence in the present case, “hosts” the Office of Workforce Development and staffs it with DPE employees.
 

 In attempting to fulfill the directives of Executive Order No. 36, the Planning Council, among other things, commissioned the Center for Government at Auburn University at Montgomery (“AUM”) to conduct a series of studies regarding the workforce-development system as it then existed in Alabama. The first phase of the AUM study analyzed the fiscal resources of the workforce-development system.
 

 The AUM study resulted in three recommendations to the Planning Council in March 2008: (1) centralization of the financial management of the workforce-development system; (2) better coordination of resources and the streamlining of access to services; and (3) better use of funding by directing funding based on “strategic needs.” The report resulting from the study estimated that if the recommendations of the study were followed, a savings of $750,000 could be realized in the first year. The Planning Council adopted the recommendations of the study, and the Office of Workforce Development began planning to implement those recommendations.
 

 In May 2008, it was decided that the SASTC and the NASTC would be consolidated with the CASTC at Southern Union State Community College.
 
 [4]
 
 However, af
 
 *95
 
 ter the
 
 Ford
 
 decision, the consolidation plan was halted, and, according to the defendants,
 

 “it was decided to extend the current arrangement — the WIA CareerLink services being provided by the SASTC, the NASTC, and the CASTC- — until October 1, 2008, at which time [the] DPE would be ready in an accelerated fashion to assume the fiscal responsibilities and management and operation of the one-stop centers to be centralized within the Governor’s Office of Workforce Development using DPE employees to provide the services. In furtherance of the new consolidation plan, each of the employees of the CASTC, NASTC, and SASTC were offered new positions with the DPE at the same salary, with essentially the same benefits, performing the same job functions at the same locations. The only significant distinction between employment with [the] DPE and employment at one of the host community colleges is that the majority of [the] employees of [the] DPE are not covered by the Alabama Fair Dismissal Act. In order to accept employment at [the] DPE, the named plaintiffs and the putative class would have had to resign their new positions with [the community colleges].”
 

 (Defendants’ brief, p. 11.)
 

 Ultimately, a letter was mailed to the employees. The letter informed the employees that the DPE would be taking over the operations of the Consortia and offered the employees “an opportunity to become an employee of the [DPE] effective October 1, 2008.” The letter stated that “[a]cceptance of this appointment necessitates your resignation as an employee of’ the community college. The letter also informed the employees that if they chose to remain employed by the community colleges, their “continued employment with the College, as with all College employees, [would] be contingent upon available funding and positions.”
 

 A form was also distributed to the employees; it formally offered them employment with the DPE and had a space at the bottom where the employee could sign and thereby accept the offer of employment with the DPE. The form stated that “your employment in such position will be continued at the pleasure of the Chancellor.” Finally, the form stated that the employee’s acceptance of a position at the DPE indicated that the employee was “voluntarily resigning] as an employee” of the employee’s respective community college.
 
 [5]
 

 
 *96
 
 The employees filed the underlying action in the present case on August 4, 2008, on behalf of a putative class of certain employees of Bishop State, Bevill State, and Southern Union. The employees sought a declaratory judgment and injunc-tive relief, both preliminary and permanent. Specifically, count I of the complaint alleged that the DPE’s announced plan to move the employees from employment with the community colleges to employment with DPE was an unlawful attempt to require the employees “to waive the employment rights accorded them by the Fair Dismissal Act.” Count II alleged that the plan to move the employees from employment with the community colleges to employment with the DPE would involve the DPE’s attempting to provide “educational services to the public.” Count II further alleged that the DPE and the chancellor “do not have legislative authorization to act as an education institution in their own right, providing educational services to the public.”
 

 The trial court conducted a hearing on the motion for a preliminary injunction; the parties presented documentary evidence at the hearing as well as live testimony and testimony by affidavit. After the hearing, the trial court entered an order granting the employees’ request for a preliminary injunction. The defendants appeal from the order granting the preliminary injunction.
 
 See
 
 Rule 4(a)(1)(A), Ala. RApp. P.
 

 Standard of Revieiu
 

 “A preliminary injunction should be issued only when the party seeking an injunction demonstrates:
 

 “ ‘ “(1) that without the injunction the [party] would suffer irreparable injury; (2) that the [party] has no adequate remedy at law; (3) that the [party] has at least a reasonable chance of success on the ultimate merits of his case; and (4) that the hardship imposed on the [party opposing the preliminary injunction] by the injunction would not unreasonably outweigh the benefit accruing to the [party seeking the injunction].” ’
 

 “Ormco Corp. v. Johns,
 
 869 So.2d 1109, 1113 (Ala.2003) (quoting
 
 Perley v. Tapscan, Inc.,
 
 646 So.2d 585, 587 (Ala.1994)).”
 

 Holiday Isle, LLC v. Adkins,
 
 12 So.3d 1173, 1176 (Ala.2008). “To the extent that the trial court’s issuance of a preliminary injunction is grounded only in questions of law based on undisputed facts,” our review is de novo. 12 So.3d at 1176.
 

 Discussion
 

 I.
 

 As a threshold matter, we note that in addition to the individually named defendants sued in their official capacities, the plaintiffs sued the Board itself, as well as Bishop State Community College, Bevill State Community College, and Southern Union State Community College. The Board and the colleges are agencies of the State.
 
 Ex parte Board of Educ.,
 
 810 So.2d 773, 776 (Ala.2001);
 
 Ex parte Craft,
 
 727 So.2d 55, 58 (Ala.1999). This Court recently held in
 
 Alabama Department of
 
 
 *97
 

 Transportation v. Harbert International, Inc.,
 
 990 So.2d 831, 841 (Ala.2008), that “only State officers named in their official capacity — and not State agencies — may be defendants in [declaratory-judgment] proceedings.”
 

 In
 
 Alabama Department of Corrections v. Montgomery County Commission,
 
 11 So.3d 189, 191-92 (Ala.2008), this Court stated:
 

 “Section 14, Ala. Const. 1901, provides: ‘[T]he State of Alabama shall
 
 never be made a defendant in any court
 
 of law or equity.’ (Emphasis added.) ‘The wall of immunity erected by § 14 is nearly impregnable.’
 
 Patterson v. Gladwin Corp.,
 
 835 So.2d 137, 142 (Ala.2002). Indeed, as regards the
 
 State of Alabama and its agencies,
 
 the wall is
 
 absolutely
 
 impregnable.
 
 Ex parte Alabama Dep’t of Human Res.,
 
 999 So.2d 891, 895 (Ala.2008) (‘Section 14 affords absolute immunity to both the State and State agencies.’);
 
 Ex parte Jackson County Bd. of Educ.,
 
 4 So.Sd 1099, 1102 (Ala.2008) (same);
 
 Atkinson v. State,
 
 986 So.2d 408, 410-11 (Ala.2007) (same);
 
 [Ex parte Alabama Department of Transportation (In re Good Hope Contracting Co. v. Alabama Department of Transportation),
 
 978 So.2d 17 (Ala.2007)] (same);
 
 Ex parte Alabama Dep’t of Transp.,
 
 764 So.2d 1263, 1268 (Ala.2000) (same);
 
 Mitchell v. Davis,
 
 598 So.2d 801, 806 (Ala.1992) (same). ‘Absolute immunity’ means just that — the State and its agencies are not subject to suit under any theory.
 

 “ ‘This immunity may not be waived.’
 
 Patterson,
 
 835 So.2d at 142. Sovereign immunity is, therefore, not an affirmative defense, but a ‘jurisdictional bar.’
 
 Ex parte Alabama Dep’t of Transp.,
 
 985 So.2d 892, 894 (Ala.2007). The jurisdictional bar of § 14 simply ‘precludes] a court from exercising subject-matter jurisdiction’ over the State or a State agency.
 
 Lyons v. River Road Constr., Inc.,
 
 858 So.2d 257, 261 (Ala.2003).”
 

 Consequently, the Board and colleges in the present case are absolutely immune from suit under § 14, Ala. Const. 1901.
 
 Harbert,
 
 990 So.2d at 841. Thus, the trial court was without jurisdiction over the Board and the colleges, and the Board and the colleges are due to be dismissed as parties. Furthermore, as to the Board and the colleges, the appeal is dismissed.
 

 II.
 

 In its order preliminarily enjoining the defendants, the trial court stated:
 

 “Plaintiffs are employees of three Alabama community colleges (Bishop State Community College, Southern Union [State] Community College, and Bevill State Community College) employed through a ‘Skills Training Consortium’ operated by each of the Colleges. In May 2008, defendants announced that the three consortia programs would become consolidated into a single program operated by Southern Union [State] Community College. Then, on June 6, 2008, the Alabama Court of Civil Appeals issued a decision in a long-standing action,
 
 South Alabama Skills Training Consortium v. Ford,
 
 997 So.2d 309 (Ala.Civ.App.2008). The Court of [CM] Appeals held that the employees of the three consortia were in fact employees of their hosting community colleges and were covered by and entitled to the protections of the Fair Dismissal Act, including ‘non-probationary status’ or tenure.
 

 “After the Court of Civil Appeals issued its decision in
 
 Ford,
 
 defendants changed their plans. Instead of consolidating the three programs under Southern Union [State] Community College, as previously planned, defendants an
 
 *98
 
 nounced that the programs would be consolidated under the [DPE], The Court finds that the primary purpose of the ‘consolidation’ was to emasculate the protections presented to the employees under the Fair Dismissal Act.”
 

 The trial court’s order further states that the DPE “and the Chancellor are unlawfully trying to expand their own authority — to expand it from the lawfully granted authority to
 
 supervise
 
 those who provide certain services to the public, to the not-granted authority to
 
 provide
 
 those services itself.” The trial court’s order notes:
 

 “Defendants argue that the issue is not ripe because none of the affected employees have disciplinary actions pending or contemplated against them. Thus, the employees have suffered no injury. This is akin to contending that taking away an employee’s insurance is of no consequence unless the employee is ill when the insurance is taken away.”
 

 The trial court enjoined the defendants from:
 

 “a. Denying or abridging plaintiffs’ and the putative class members’ rights under the Alabama Fair Dismissal Act, Alabama Code [1975,] Section 36-26-100, et seq.;
 

 “b. Requiring or attempting to require plaintiffs and the putative class members to waive their rights under the Fair Dismissal Act, Alabama Code [1975,] Section 36-26-100, et seq.;
 

 “c. Ceasing, altering, or interfering with the salaries of and the employment benefits of, plaintiffs, and the putative class members; ...
 

 “d. Failing or refusing to recognize and acknowledge the continued employment of plaintiffs and the putative class members as employees of their respective community colleges, with full rights accorded them by the Fair Dismissal Act, Alabama Code [1975,] Section 36-26-100, et seq.[; and]
 

 “e. Enforcing or acting upon any letter of resignation submitted by a plaintiff or putative class member pursuant to defendants’ demand that employees resign their employment with their respective colleges to accept employment with the Department of Postsecondary Education.”
 

 In its order, the trial court recited the four requirements for the issuance of a preliminary injunction as outlined in
 
 Holiday Isle, supra,
 
 and declared that the employees had established each of the requirements. The trial court did not elaborate, however, as to how the employees had demonstrated each requirement.
 

 The defendants contend that the trial court exceeded its discretion in concluding that the employees established the first and second requirements for the issuance of a preliminary injunction: “that without the injunction [they] would suffer immediate and irreparable injury” and that they have “no adequate remedy at law.” In support of their position, the defendants cite
 
 Woodward v. Roberson,
 
 789 So.2d 853 (Ala.2001).
 

 In
 
 Woodward,
 
 the newly elected sheriff of Jefferson County, Woodward, terminated the employment of two deputies, Farley and Roberson. 789 So.2d at 855.
 

 “The Jefferson County Personnel Board ordered Woodward to reinstate Farley and Roberson to their previous positions; Woodward refused. Farley and Roberson sued Woodward and the Personnel Board in an effort to enforce the Personnel Board’s order. In their initial complaint, Farley and Roberson sought declaratory and injunctive relief grounded upon allegations that they had been dismissed or demoted without due process of law; they based their claim upon rights derived from the enabling
 
 *99
 
 legislation creating the Personnel Board and from the Alabama Constitution of 1901. They also sought money damages for lost earnings and benefits and for mental anguish.”
 

 789 So.2d at 855. The trial court granted the deputies’ motion for a preliminary injunction ordering the sheriff to reinstate them to their positions. This Court reversed the trial court’s order.
 

 After reciting the above-quoted requirements for the issuance of a preliminary injunction, this Court stated:
 

 “Farley and Roberson did not demonstrate an immediate and irreparable injury for which their remedy at law would be inadequate. This is an action against Woodward individually and as sheriff, brought by Farley and Roberson, as individuals, for 1) permanent in-junctive relief reinstating them in their positions and 2) money damages. Their motion for a preliminary injunction avers that they would ‘suffer economic hardship if relief is delayed.’ Woodward calls out' attention to
 
 Perley [v. Tapscan, Inc.,
 
 646 So.2d 585 (Ala.1994)], in which this Court affirmed an order denying a preliminary injunction in an employment case. This Court stated in
 
 Perley
 
 that ‘ “irreparable injury” is an injury that is not redressable in a court of law through an award of money damages.’ 646 So.2d at 587 (citing
 
 Triple J Cattle, Inc. v. Chambers,
 
 551 So.2d 280 (Ala.1989)). Woodward also refers us to
 
 Van Arsdel v. Texas A & M University,
 
 628 F.2d 344, 346 (5th Cir.1980) (reversing an order granting a preliminary injunction and holding that reinstatement after trial, coupled with an award of backpay, should suffice to redress the alleged wrong). Neither Farley and Roberson nor the Personnel Board has furnished any contrary authority in the employment context.
 

 “Clearly, an award of money damages provides an adequate remedy for a loss of earnings or for mental anguish. If Farley and Roberson prevail on a final hearing and Woodward, in his official capacity, is ordered to reinstate them with backpay, or if Woodward loses on his defenses of immunity from personal liability, they will have an adequate remedy at law.”
 

 789 So.2d at 856.
 

 The employees argue that without the preliminary injunction, they will be “strip[ped] of the protections of the [FDA],” including the nonprobationary status afforded certain employees under § 36-26-101, Ala.Code 1975. The employees contend that without the injunction, they will become at-will employees, that they will lose the protections of the FDA, and that, in the event their employment is terminated, they will have no remedy at law. However, the employees also argue to this Court, as they do in count I of their complaint, that they cannot be forced to “voluntarily resign” from their employment at the community colleges — i.e., the employees contend that
 
 even if
 
 they signed the forms provided to them by the DPE with statements to the effect that the employees agreed to “voluntarily” resign their positions with the community colleges to become at-will employees of the DPE, the protections of the FDA would nonetheless apply to them.
 
 [6]
 

 The defendants argue that
 

 
 *100
 
 “[i]f the ... decision in
 
 Ford
 
 is instructive on any issue, it is that [the employees] have an adequate remedy at law to redress any rights they may have under the Fair Dismissal Act. Clearly, should [the employees] prevail on the merits of their claim, they have an adequate remedy in the form of having their rights under the Fair Dismissal Act
 
 restored retroactively,
 
 or, in the event of a possible disciplinary action against [the employees], they would have the remedies outlined in
 
 Ford:
 
 a rescission of the termination and the provision of back pay. As such, [the employees] cannot establish the existence of an immediate and irreparable injury or that they lack an adequate remedy at law.”
 

 (Defendants’ brief, pp. 20-21 (emphasis added).) Citing
 
 Woodward, supra,
 
 the defendants contend that, if reinstatement and backpay were sufficient relief for the deputies in
 
 Woodward
 
 whose employment had been terminated, the remedies available under the FDA, assuming it applies to the employees, are sufficient relief for the employees in the present case
 
 if
 
 the employees eventually face the termination of their employment. We agree.
 

 For all that appears in the record, none of the employees in the present case has been terminated or suffered any actual deprivation of any rights he or she may have under the FDA. However, assuming the employment of the employees is terminated at some point in the future
 
 and
 
 assuming the employees are correct in their assertion that the FDA applies to them, nothing indicates that the remedies available to the employees under the FDA will be inadequate. Alternatively, nothing indicates that the remedies available to them will be inadequate if the employees ultimately prevail in their contention, as alleged in count II of their complaint, that the DPE and the chancellor “do not have legislative authorization” to proceed with their plans.
 

 Accordingly, the employees have not demonstrated that without the preliminary injunction they would suffer irreparable injury for which there is no adequate remedy at law.
 
 See generally Woodward, supra; see also Ormco Corp. v. Johns,
 
 869 So.2d 1109, 1113-14 (Ala.2003):
 

 “ ‘ “Irreparable injury” is an injury that is not redressable in a court of law through an award of money damages.’
 
 [Perley v. Tapscan, Inc.,]
 
 646 So.2d [585,] 587 [(Ala.1994)] (citing
 
 Triple J Cattle, Inc. v. Chambers,
 
 551 So.2d 280 (Ala.1989)). However, ‘courts will not use the extraordinary power of injunc-tive relief merely to allay an apprehension of a possible injury; the injury must be imminent and irreparable in a court at law.’
 
 Martin v. City of Linden,
 
 667 So.2d 732, 736 (Ala.1995); see also
 
 Borey v. National Union Fire Ins. Co. of Pittsburgh,
 
 934 F.2d 30, 34 (2d Cir.1991) (stating that ‘a mere possibility of irreparable harm is insufficient to justify the drastic remedy of a preliminary injunction’).”
 

 
 *101
 
 Thus, the trial court erred in issuing the preliminary injunction.
 

 Conclusion
 

 Because they are absolutely immune from suit, the Board and the colleges are due to be dismissed as parties, and, as to the Board and the colleges, the appeal is dismissed. As to the remaining defendants, the trial court’s order issuing the preliminary injunction is reversed, and the cause is remanded for further proceedings.
 

 REVERSED IN PART; APPEAL DISMISSED IN PART; AND REMANDED.
 

 COBB, C.J., and LYONS, WOODALL, STUART, BOLIN, PARKER, MURDOCK, and SHAW, JJ., concur.
 

 [1]
 

 . The opinion in
 
 Ford
 
 includes an extensive description of the creation, practices, and procedures of the Consortia and their predecessor organizations. 997 So.2d at 315-24.
 

 [2]
 

 . The Court of Civil Appeals also held (1) that review by common-law certiorari of the ALJ's decision under § 36-26-115, Ala.Code 1975, was appropriate, 997 So.2d at 329-33; and
 
 *94
 
 (2) that, in purporting to apply his order to all similarly situated employees of the colleges, the ALJ had exceeded his discretion because, the Court held, the FDA does not authorize an ALJ to offer relief on a class-wide basis or to apply an order to parties not before the ALJ, 997 So.2d at 333-34.
 

 [3]
 

 . According to Executive Order No. 36,
 

 "lt]he [Planning] Council shall be composed of the following members or their respective designees:
 

 "the Director of the Office of Workforce Development;
 

 "the Chancellor of the Alabama College System;
 

 “the Director of the Alabama Department of Economic and Community Affairs;
 

 “the Director of the Department of Industrial Relations;
 

 "the Director of the Alabama Development Office;
 

 "the Commissioner of the Department of Human Resources;
 

 "the Executive Director of the Department of Senior Services;
 

 "the Director of the Alabama Industrial Training Institute; and
 

 "the State Superintendent of Education.”
 

 In addition to those members, the Governor appoints three at-large members to the Planning Council, including one "president of an Alabama public two-year college” and "two representing Alabama business and industry.”
 
 Id.
 

 [4]
 

 . The defendants assert that after the consolidation, the CASTC would be operated and managed by the Office of Workforce Development and that Southern Union State Commu
 
 *95
 
 nity College was to serve as the fiscal agent for the CASTC. The defendants further contend that the original plan was for the DPE to serve as the fiscal agent but that in May 2008 it was determined that the DPE would not be ready to assume those responsibilities by July 1, 2008, the beginning of the next program year for the WIA system. Thus, the defendants contend that they intended for Southern Union State Community College to serve as the fiscal agent for the CASTC only until July 1, 2009, at which time the DPE would assume the fiscal-agent responsibilities.
 

 The employees dispute the defendants' assertion that the original planned consolidation at Southern Union was intended to be for only a year until DPE would be ready to assume the fiscal-agent responsibilities. Rather, the employees assert that
 

 "all of the documents created by [the] DPE and all of the statements made by [the] DPE employees stated flatly that the consolidation was to be under Southern Union State Community College and do not say or imply that there was to be any temporal limitation to that consolidation.”
 

 (Employees' brief, p. 17.) Even if the employees’ assertion is correct, however, it would have no effect on the outcome of this appeal; therefore, this factual dispute is of no consequence for purposes of this appeal.
 

 [5]
 

 . The DPE also provided the employees with a "Personnel Procedures Handbook” for DPE
 
 *96
 
 employees. It included the following provisions:
 

 "All personnel serve at the pleasure of the Chancellor.
 

 [[Image here]]
 

 "The Chancellor may terminate any employee at-will.
 

 [[Image here]]
 

 "The [DPE] staff serves at the pleasure of the Chancellor. Therefore he has the absolute authority to hire and discharge at will without notice."
 

 [6]
 

 . The employees cite to this Court, as they did to the trial court, authority that, the employees contend, stands for the “proposition that a public employer cannot require its employees to waive or forego their rights under the Teacher Tenure Law or Fair Dismissal Act.” (Employees' brief, p. 34.)
 
 See, e.g., Clayton v. Board of School Comm'rs of Mobile County,
 
 552 So.2d 145, 149 (Ala.Civ.App.1988),
 
 rev’d on other grounds, Ex parte Clayton,
 
 552 So.2d
 
 *100
 
 152, 155 (Ala.1989), in which the Court of Civil Appeals held:
 

 "[T]he employees here were working pursuant to a three-month contract, and the school therefore contends that they were not covered under the Act as their contracts had expired. It appears to this court that to allow such action would emasculate the intent of the Act. By deliberately designing and requiring short, three-month contracts of employment, the school could effectively modify and evade the requirements of the Act. See
 
 Haas v. Madison County Board of Education,
 
 380 So.2d 873 (Ala.Civ.App.1980), cert.
 
 denied,
 
 380 So.2d 877 (Ala.1980). Therefore, we hold that these employees, even though employed pursuant to a three-month contract, do come within the provision of § 36-26-104 and are entitled to all the protection of the Act.”