REL: 09/26/2014

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0649), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## SPECIAL TERM, 2014

————————————

### 1111554

————————————

**Thomas L. White, Jr., as Comptroller of the State of Alabama**

**v.**

**Karen John et al.**

**Appeal from Montgomery Circuit Court**
**(CV-12-901064)**


MURDOCK, Justice.

The State Comptroller, Thomas L. White, Jr. ("the comptroller"), appeals from a preliminary injunction entered by the Montgomery Circuit Court in response to an action for declaratory and injunctive relief brought by Karen John, the

1111554

Alabama Education Association ("the AEA"), Randy Hebson, and the Alabama State Employees Association ("the ASEA"). We reverse and remand.[1]

## I. Statement of Facts

This is the third time a case involving the question of deductions by the comptroller from a State employee's salary for payment of contributions and dues has come before this Court recently.[2] The first case, <u>Davis v. Alabama Education</u>

---

[1]The plaintiffs filed this action against both the comptroller in his official capacity and against "the Office of the State Comptroller," and "the Office of the State Comptroller" is listed as an appellant in the notice of appeal in this case. For the reasons discussed in Part III.A. of this opinion, it appears that there is no such entity as "the Office of the State Comptroller," and, therefore, no such entity is named as a party in the style of this case.

[2]Subject to certain conditions, § 36-1-4.3, Ala. Code 1975, provides that the comptroller may make deductions from the salary of a State employee upon the employee's request. Specifically, § 36-1-4.3(a), Ala. Code 1975, provides:

"The state Comptroller shall adopt statewide policies which provide for deductions from the salaries of state employees or groups of state employees whenever a request is presented to the state Comptroller by a group of participating state employees equal in number to at least 200 provided, however, that deductions being made as of April 23, 1985, shall continue to be made. The deductions shall be made at least monthly and shall be remitted to the appropriate company, association, or organization as specified by the employees. The deductions may be made for membership dues, and

2

1111554

_Ass'n_, 92 So. 3d 737 (Ala. 2012), concerned the comptroller's implementation on or about June 28, 2010, of a new policy stopping certain deductions from the paychecks of State employees. Specifically, the comptroller interpreted then existing § 17-17-5, Ala. Code 1975,[3] as preventing him from executing salary deductions and remitting the deducted funds as contributions to the political-action committees of organizations -- including the political-action committees of the AEA and the ASEA. By the same token, based on his determination that some portion of the deductions designated for remittance to the AEA was being transferred by the AEA to its political-action committee, the comptroller ceased execution of all salary deductions designated for remittance to the AEA. The comptroller also understood the then existing statute therefore to prevent him from making payroll

_____

voluntary contributions, and insurance premiums. Any deduction provided under the provisions of this section may be terminated upon two months' notice in writing by a state employee to the appropriate company, association, or organization and to the appropriate payroll clerk or other appropriate officials as specified by the state Comptroller."

[3]Section 17-17-5 was substantially amended effective March 20, 2011, by Act No. 2010-761, Ala. Acts 2010. See discussion infra.

3

deductions for the purpose of, in turn, making remittances to the AEA itself. As then codified, § 17-17-5 provided in part that "[n]o person in the employment of the State of Alabama ... shall use any state ... funds, property, or time, for any political activities." The comptroller also based his position on § 36-12-61, Ala. Code 1975, which provides:

> "It shall be unlawful for any officer or employee of the State of Alabama to use or to permit to be used any state-owned property of any character or description, including stationery, stamps, office equipment, office supplies, automobiles or any other property used by him, in his custody or under his control for the promotion or advancement of the interest of any candidate for the nomination or election to any public office of the State of Alabama."

The AEA, the ASEA, and their political-action committees filed a declaratory-judgment action challenging the comptroller's change in policy and sought a preliminary injunction to force the comptroller to continue executing salary deductions as he had previously. The Montgomery Circuit Court granted the requested preliminary injunction; the State finance director and the comptroller appealed the circuit court's order to this Court. That appeal was the subject of Davis.

4

1111554

Subsequently, in a special session, the legislature enacted, and the governor signed into law on December 20, 2010, Act No. 2010-761, Ala. Acts 2010 ("the Act"). The Act amended § 17-17-5, Ala. Code 1975, to state explicitly as follows:

> "(a) No person in the employment of the State of Alabama ... shall use any state, county, city, local school board, or other governmental agency funds, property, or time, for any political activities.

> "(b)(1) No person in the employment of the State of Alabama ... may arrange by salary deduction or otherwise for any payments to a political action committee or arrange by salary deduction or otherwise for any payments for the dues of any person so employed to a membership organization which uses any portion of the dues for political activity. ...

> "....

> "(2) Any organization that requests the State of Alabama, a county, a city, a local school board, or any other governmental agency to arrange by salary deduction or otherwise for the collection of membership dues of persons employed by the State of Alabama, a county, a city, a local school board, or any other governmental agency shall certify to the appropriate governmental entity that none of the membership dues will be used for political activity. Thereafter, at the conclusion of each calendar year, each organization that has arranged for the collection of its membership dues of persons employed by the State of Alabama, a county, a city, a local school board, or any other governmental agency shall provide the appropriate governmental entity a detailed breakdown of the expenditure of

5

the membership dues of persons employed by the State of Alabama, a county, a city, a local school board, or any other governmental agency collected by the governmental entity. ..."

The Act became effective on March 20, 2011.

Before the Act became effective, the AEA and six of its members filed an action in federal court on February 25, 2011, against various State officials challenging the constitutionality of the Act under the First and Fourteenth Amendments to the United States Constitution. See Alabama Educ. Ass'n v. State Superintendent of Educ., 665 F.3d 1234 (11th Cir. 2011). This lawsuit and matters pertaining to it were described in this Court's opinion in Davis, 92 So. 3d at 743-45:

"On March 8, 2011, the finance director and the comptroller notified this Court that on February 25, 2011, the plaintiffs had filed in the United States District Court for the Northern District of Alabama an action against the governor, the finance director, the comptroller, and other defendants ('the federal-court defendants') challenging the constitutionality of the Act under the First and Fourteenth Amendments to the United States Constitution. Specifically, the complaint alleged that the Act's ban on salary deductions in support of political activities is 'overbroad' and vague, that enforcement of the Act would result in 'viewpoint' discrimination, and that the Act violates the Equal Protection Clause of the Fourteenth Amendment. Subsequent filings in this Court by the finance director and the comptroller

notified this Court that the federal district court on March 18, 2011, entered a preliminary injunction against the federal-court defendants that 'enjoined and restrained [them] from implementing or enforcing [the Act].' The federal district court's injunctive order further stated that '[a]ll defendants named above must honor employee requests for payroll deductions to the Alabama Education Association ("AEA"), and must remit the deducted amounts (including amounts representing contributions to "A-VOTE" [Alabama Voice of Teachers for Education, a political-action committee affiliated with the AEA]) to AEA.' The federal-court defendants filed a notice of appeal of the preliminary injunction, as well as a motion to stay the injunction, to the United States Court of Appeals for the Eleventh Circuit.

"On April 5, 2011, the Eleventh Circuit Court of Appeals entered an order denying the motion to stay the federal district court's preliminary injunction insofar as it prohibited the implementation of the Act. The Eleventh Circuit granted a stay, however, of the portion of the preliminary injunction that required the federal-court defendants to honor employee requests for salary deductions designated for the AEA that represented contributions to A-VOTE. The Eleventh Circuit noted that, before the enactment of the Act, the comptroller, based on preexisting Alabama law, already had ceased executing salary deductions from applicable State employees' paychecks that represented contributions to political-action committees. In particular, the Eleventh Circuit noted:

"'If, as the district court has preliminarily concluded, the new Act is unconstitutional and its provisions are nonseverable, the provisions of the Alabama Code on which the Comptroller's June 28, 2010 policy was based are unaffected by the new Act. There is nothing in the district

7

court's memorandum opinion, or in the law of which we are aware, to justify a federal court injunction preventing the [federal-court] defendants from refusing to deduct for, or remit to, any organization amounts representing contributions to A-VOTE or any other [political-action committee], based on their interpretation of pre-Act 2010-761 state law. To the contrary, Ysursa v. Pocatello Educ. Ass'n, 555 U.S. 353, 129 S.Ct. 1093 (2009), clearly permits the defendants to refuse to collect and remit PAC contributions.'[6]

"Thus, the Eleventh Circuit upheld the federal district court's preliminary injunction of the implementation of the Act, except that it stayed the injunction

"'insofar as the preliminary injunction: 1) requires any defendant to honor employee requests for payroll deductions for contributions to A-VOTE or to any other [political-action committee]; 2) requires any defendant to remit or pay over any PAC payroll deductions to any entity or person other than the employees from whose pay they were deducted; and 3) prevents any defendant from remitting or refunding any PAC payroll deduction to the employee from whose pay it has been deducted.'

"On December 27, 2011, the Eleventh Circuit Court of Appeals filed with this Court certified questions pertaining to the Act in relation to the constitutional challenge filed by the AEA and A-VOTE, which query has been docketed as case no. 1110413. Those questions concern the interpretation of the Act and specifically ask:

"'1. Is the "or otherwise" language in [the Act] limited to the use of state mechanisms

8

to support political organizations, regardless of the source?

"'2. Does the term "political activity" refer only to electioneering activities?'

"_____

"[6]In _Ysursa_, the United States Supreme Court concluded that 'nothing in the First Amendment prevents a State from determining that its political subdivisions may not provide payroll deductions for political activities.' 555 U.S. 353, 355, 129 S.Ct. 1093, 172 L.Ed.2d 770 (2009)."

(Some footnotes omitted.)

In its submission of the certified questions, the United States Court of Appeals for the Eleventh Circuit further limited the federal district court's preliminary injunction, stating:

"Although the ultimate resolution of this matter may depend on the Alabama Supreme Court's resolution of the certified questions, we believe it is appropriate to narrow the district court's injunction in the interim. In its memorandum opinion, the district court issued a preliminary injunction barring the Act's enforcement _in toto_. However, a state's restriction on payroll deductions for organizations engaged in electioneering activities would likely be found constitutional under _Ysursa_. To the extent the state limits its enforcement of the Act in this way, it may proceed. The preliminary injunction remains in place as to enforcement that extends beyond that range of conduct."

665 F.3d at 1239.

1111554

This Court released <u>Davis</u> on March 23, 2012. We ruled that the enactment of the Act rendered moot the action that had been filed by the AEA, the ASEA, and their political-action committees because the newly amended § 17-17-5 constituted the effective law on the subject of the legality of salary deductions for contributions to political-action committees.

For approximately six months following the Eleventh Circuit's submission of the certified questions to this Court, the comptroller continued to execute payroll deductions for dues from State employees who were members of the AEA and the ASEA. On June 29, 2012, the comptroller issued a "memorandum" to "Affected Organizations" regarding "Act 2010-761 Guidelines (State Comptroller Payroll Deductions, Revised June 2012)" ("the guidelines"). The memorandum first recounted the comptroller's authority to "adopt statewide policies which provide for deductions from the salaries of state employees" as provided in § 36-1-4.3, Ala. Code 1975. It then related the substance of § 17-17-5 as amended by the Act. The memorandum then detailed the "Procedure for Requesting Payroll Deductions for Membership Dues":

10

1111554

> "As required by § 36-1-4.3, at least 200 state employees must submit a request for a payroll deduction for membership dues to a particular organization using a form prescribed by the Comptroller.

> "The request must include the Certification of an authorized representative of the organization certifying that the representative has exercised due diligence to determine that the information provided in the Certification is true and correct and agreeing to comply with the requirement of Code § 17-17-5(b)(1) to provide the annual 'detailed breakdown' of the expenditures of the membership dues collected by the State by payroll deduction. That detailed breakdown for the previous calendar year must be received by the Comptroller not later than April 30 of the immediately following calendar year, unless the Comptroller specifies a different deadline."

Following the statement of procedure, the memorandum provided "Guidelines for Determining if an Organization is Engaged in Political Activity and not Eligible to Receive Dues Via Salary Deduction."  This portion of the memorandum provided:

> "For purposes of [the Act], § 1(b), the term 'political activity' refers to the organization's activity which advocates or opposes the election of any person who is a candidate for public office. The organization's activity can be 'political' if it mentions the name of a particular political party in a communication, but only if the activity also includes advocating or opposing election of candidates, or requests financial support related to such election. Further, 'political activity' includes only the following forms of activity:

11

"1. Distributing political literature of any type.

"2. Engaging in or paying for any type of political advertising in any medium.

"3. Engaging in or paying for any form of political communication, including communications which mention the name of a political candidate.

"4. Phone calling for any political purpose.

"5. Engaging in or paying for public opinion polling.

"6. Providing any type of in-kind help or support to or for a political candidate.

"7. Making contributions to or contracting with any entity which engages in any form of political communication, including communications which mention the name of a political candidate.

"The following are not considered 'political activity' by a certifying organization prohibited by Section 1(b) of the Act:

"1. Communications, and the coordination of communications, to or from public officials about issues of public concern (i.e., lobbying), if there is no mention of the words 'elect,' 'vote,' 'support,' 'oppose,' 'ballot' or 'for' in relation to the election of a person to office.

"2. Advertising, distributing literature, phone calling, polling, and communicating about issues of public concern without mention of any person by name.

"3. Advertising, distributing literature, and communicating about a person who has not publicly announced as a candidate and not made any filing required of a candidate for the next election under Alabama law or federal law.

"4. Advertising, distributing literature, and communicating regarding a person who is a publicly announced candidate, or who made a filing required of a candidate for the next election, but only if the communication does not mention the person's status as a candidate, and does not use the words 'elect,' 'vote,' 'support,' 'oppose,' 'ballot' or 'for' (or substantially similar word) in relation to the election of a person to office.

"5. Public opinion polling on any subject that does not include the name of a person who is a publicly announced candidate or of a person who has made a filing required of a candidate for the next election.

"6. Public opinion polling of voters on the day of an election about candidates, if limited to asking for which candidate they voted (i.e., exit polling).

"7. The use of office space, which is under the ownership or control of the

certifying organization, by a person who is a publicly announced candidate, or of a person who has made a filing required of a candidate for the next election, but only if the space is not used for planning political activity.

"8. Individual, private, insubstantial use of the certifying organization's phone equipment, not made to multiple recipients in simultaneous fashion, and not coordinated with multiple phone calls made by another person.

"9. The private expression of opinion orally about a candidate by a person who also is merely an officer of the certifying organization receiving dues via salary deduction.

"10. The private solicitation of contributions for a candidate by a person [who also is] merely an officer of the certifying organization receiving dues via salary deduction.

"11. The private participation in the management of a political action committee by a person who also is merely an officer of the certifying organization receiving dues via salary deduction.

"12. Contributing to or contracting with an entity that is not a political party, a political action committee (including a principal campaign committee) and that is not for the purpose of political communication.

"Before an organization is barred from arranging for the collection of its membership dues, or other

payment, through payroll deduction, the Comptroller will give written notice to the organization stating how the organization has violated [the Act], and will provide it a reasonable opportunity to demonstrate that a violation has not occurred.

"These guidelines are focused on 'political activity' that is 'electioneering,' and they do not list all possible circumstances in which an organization may be engaged in 'political activity,' or 'electioneering.' Organizations receiving dues or other payments, via deduction from the salaries of public employees[,] are urged to make inquiry to resolve uncertainty about anticipated activity that may be covered. Further, these guidelines are merely interpretive guidelines to enforcing [the Act], and, given that [the Act] has never been enforced previously, are subject to revision. For any such revision, it is intended that notice will be provided to affected public employees and organizations, if feasible."

The memorandum also contained a sample "Act 2010-761 Certification Form for Organizations." The form contains spaces for an organization's name and contact information. If the organization wishes to receive salary deductions from State employees, the form requires an individual from the organization to provide a notarized signature and to certify under penalty of being barred from receiving deductions that the organization "will not use any portion of the membership dues collected by payroll deduction from the pay of its members who are State employees for political activity as that

15

term is defined in [the Act]" and that the organization will "provide to the State Comptroller a detailed breakdown of the expenditure of those membership dues not later than the deadline, and using the forms, prescribed by the Comptroller from time to time."

The comptroller sent copies of the memorandum to the AEA, the ASEA, and other organizations that were receiving dues from State-employee members via salary deductions. On August 1, 2012, the ASEA submitted its certification to the comptroller, along with a letter from its counsel, stating, in part, that the organization submitted the certification

> "under protest and without waiving any of its rights as they relate to any ongoing litigation concerning [the Act], or related to the rules and regulations promulgated in your 'Memorandum to Affected Organizations' dated June 29, 2012. ASEA feels compelled to submit the Certification in order to continue the withholding of its membership dues which are vital to ASEA's ongoing operations and continued existence."

The AEA declined to submit a certification form and thus was deemed ineligible to receive dues via payroll deductions. The guidelines went into effect July 25, 2012.

On August 17, 2012, the AEA, AEA member and State employee Karen John, the ASEA, and ASEA president Randy Hebson

1111554

(hereinafter sometimes referred to collectively as "the plaintiffs") sued White in his official capacity as comptroller and the "Office of the State Comptroller" in the Montgomery Circuit Court seeking a judgment declaring that the guidelines are void because, the plaintiffs maintained, they had been promulgated without following the procedures required in the Alabama Administrative Procedure Act, §§ 41-22-1 through 41-22-27, Ala. Code 1975 ("the AAPA"), and an injunction preventing the comptroller from implementing or enforcing the guidelines in any manner until and unless the comptroller complied fully with the AAPA.

On the same date, the plaintiffs filed a separate motion seeking a preliminary injunction prohibiting the implementation of the guidelines. The comptroller filed a motion to dismiss the complaint for lack of jurisdiction and for failure to state a claim; he also filed opposition to the motion for a preliminary injunction.

On August 30, 2012, the circuit court issued a preliminary injunction enjoining the implementation of the guidelines. In pertinent part, the order stated:

> "The Court finds and concludes that, unless preliminary injunctive relief is granted, Plaintiffs

17

will suffer irreparable harm, for which there is no adequate remedy at law. <u>The harm consists primarily of the fact that the Plaintiffs will not be receiving the funds that their members have sought to have deducted and forwarded to the Plaintiffs.</u> The irreparable nature of this harm and the absence of an adequate remedy at law are confirmed by the prospect that the doctrine of sovereign immunity would shield Defendants from many (perhaps all) forms of retrospective monetary relief in this case.

"The Court finds and concludes that no appreciable and legally cognizable harm will occur to Defendants by virtue of a preliminary injunction; certainly any such harm, if there is any, does not outweigh the harm that Plaintiffs would suffer absent an injunction. Defendants will not have substantial difficulty maintaining the system of deductions that has existed for years.

"....

"It is hereby ordered that Defendants, and all those acting in concert with them:

"a) must not enforce the Guidelines (Rules) that are the subject of this lawsuit; and

"b) until further order of this Court, must, in all future pay periods, honor all employee requests for payroll deductions pertaining to, or involving, AEA and ASEA.

"This injunctive order will remain in effect during the pendency of this case, unless and until modified by the Court.

"The case will be set for final hearing on the merits in due course, unless it is first resolved through ruling on motion(s)."

18

On October 25, 2013, this Court issued its opinion answering the two questions certified to it by the Eleventh Circuit Court of Appeals. State Superintendent of Educ. v. Alabama Educ. Ass'n, [Ms. 1110413, Oct. 25, 2013] ___ So. 3d ___ (Ala. 2013). We held in response to the first certified question that the "or otherwise" language in § 17-17-5 as amended by the Act is, in fact, limited to the use of State mechanisms to arrange for payments to political-action committees and other organizations that use any portion of their dues for political activities. As for the second certified question -- whether the term "political activity" refers only to "electioneering activities" -- we answered it in the negative. Among other things, we quoted from Black's Law Dictionary the definition of "political" as "'pertaining to or relating to the policy or the administration of government .... [O]f or pertaining to exercise of rights and privileges or the influence by which individuals of a state seek to determine or control its public policy ...." ___ So. 3d at ___.

On February 5, 2014, in response to this Court's answers to its certified questions, the Eleventh Circuit Court of

1111554

Appeals released its opinion in <u>Alabama Education Ass'n v. State Superintendent of Education</u>, 746 F.3d 1135 (11th Cir. 2014). Having received this Court's answers to the certified questions previously posed by it, the Eleventh Circuit explained, among other things, that "[s]ome of AEA and A-VOTE'S conduct indisputably falls within the Act's definition of political activity, and therefore the challengers cannot bring a facial challenge arguing that the term is vague based on other action applications." 746 F.3d at 1140. Holding that it was "not substantially likely [that] the challengers will succeed on the merits" of their claim, the Eleventh Circuit held that the district court had erred in entering a preliminary injunction on the ground that the Act was void as being vague. 746 F.3d at 1140.

On February 4, 2014, the day before the Eleventh Circuit Court of Appeals released its opinion, the comptroller filed a motion in the present case seeking permission to submit to this Court a "Second Supplemental Brief" that would incorporate additional argument based upon this Court's answers to the Eleventh Circuit's certified questions in <u>State Superintendent of Education v. Alabama Education Ass'n</u>, supra.

20

1111554

The comptroller's motion noted that our decision in that case "altered the legal landscape for the appeal at bar" and further stated:

> "This Court's ruling construed [the Act] to give it a broader reach than the Comptroller did when he announced the Guidelines that are disputed in this case. As a result, the Comptroller is due to revise the limits on his enforcement of [the Act] reflected in the Guidelines. Particularly, the Comptroller is due to revise his view that [the Act] does not apply to limit salary deduction for organizations spending dues on issue-based ballot measures."

The comptroller's motion advised the Court of "the impending and possible changes to the Guidelines that may alter the factual circumstances underlying the Court's decision in this appeal." The comptroller also stated that "[a]bandonment of the Guidelines would be permissible because [this Court's] October 2013 ruling itself offers sufficient guidance to persons effected by [the Act]."

After taking note of the more expansive definition of "political activity" in this Court's decision in response to the certified questions, the comptroller's Second Supplemental Brief concluded:

> "The Comptroller is due to revise his Guidelines to be consistent with Ysursa, with the Eleventh Circuit's direction, and with this Court's interpretation of the Act. The Comptroller plans to

21

formulate revisions to the Guidelines and hopes to implement revisions by March 31, 2014.

"In addition to revising the Guidelines, the Comptroller is also considering rescinding them altogether now that the October 2013 ruling itself provides guidance about applying [the Act]. Abandoning the Guidelines would end the unseemly, uneven enforcement of [the Act] caused by the [trial] court's overreaching injunction.... By eliminating the Guidelines, the Comptroller would eliminate the basis for the injunction against Act 761, and end the special treatment it accords AEA and ASEA."

Several days later, the AEA and Karen John filed a "Response" to the comptroller's motion to supplement his brief. This response was filed on February 11, 2014, i.e., following the release by the Eleventh Circuit Court of Appeals of its opinion in the certified-question case. AEA and John did not oppose the motion for supplemental briefing, but "point[ed] out that the status of the case is now in an unsettled posture; and ... suggest[ed] that the time for filing a responsive brief should not begin to run until certain further developments have made this case truly ready for final consideration." Taking note of this Court's decision in State Superintendent of Education v. Alabama Education Ass'n, supra, answering the certified questions posed by the Eleventh Circuit and the latter court's

incorporation of those answers into its February 5, 2014, opinion, the AEA and John stated: "Thus it is now known that the Comptroller's 'Guidelines' do not reflect a correct interpretation of the Act." The response goes on to state that, as a result of these decisions, "the situation is still in flux in two important ways, and these appellees respectfully suggest that it would be wiser and more efficient for this Court to receive supplemental briefs when the now-fluid situation has resolved into a settled form."

The first way in which the AEA and John asserted that the situation was still "in flux" was to explain that the Eleventh Circuit's opinion of February 5, 2014, was not yet final and that the parties to the appeal pending in this Court should await a "final decision and mandate" by that court. The AEA and John also stated:

> "[T]he situation is in flux in that the Comptroller has now stated -- in his latest motion to this Court -- that he no longer stands behind his own 'Guidelines' that are at issue this present appeal. But the Comptroller has told this Court that he has not yet decided what he will do, in that regard -- he is keeping his options open, as between (a) issuing new Guidelines, or (b) simply revoking the current Guidelines and not replacing them with any revised version. See Second Supplemental Brief of Appellant[], pp. 6-8.

"The Comptroller's new disavowal of his Guidelines may change the complexion of this case and may affect how the Court rules. But this Court should be able to know, before undertaking to rule, what the Comptroller's real position is: will he issue new Guidelines, or abandon Guidelines altogether? At present, the Comptroller has placed the Court in a state of uncertainty. This Court should not have to rule in this case without clarity from the Comptroller as to which choice he will make."

The Eleventh Circuit Court of Appeals issued its mandate in Alabama Education Ass'n v. State Superintendent of Education on April 14, 2014. Some time has now passed since the filings of the comptroller and the AEA and John described above and the April 14 issuance by the Eleventh Circuit Court of Appeals of the mandate anticipated by those filings. During this time, this Court has not been notified that the guidelines have been withdrawn, as the parties suggested they might be. Nor have we been notified of any modification to the guidelines, as was represented to be "due" and "impending."

We therefore proceed to address the merits of the appeal before us. Because the issue upon which we dispose of this appeal is one that has already been briefed by the parties, we

do not find a need for any further briefing as has been offered by the parties.

## II. Standard of Review

A preliminary injunction should be issued only when the party seeking the injunction demonstrates the following four elements:

> "'"(1) that without the injunction the plaintiff will suffer immediate and irreparable injury; (2) that the plaintiff has no adequate remedy at law; (3) that the plaintiff is likely to succeed on the merits of the case; and (4) that the hardship imposed upon the defendant by the injunction would not unreasonably outweigh the benefit to the plaintiff."'"

Barber v. Cornerstone Cmty. Outreach, Inc., 42 So. 3d 65, 78 (Ala. 2009) (quoting Blount Recycling, LLC v. City of Cullman, 884 So. 2d 850, 853 (Ala. 2003), quoting in turn Blaylock v. Cary, 709 So. 2d 1128, 1130 (Ala. 1997)). Rulings about the law imbedded in the decision to issue a preliminary injunction are reviewed de novo. See State Bd. of Educ. v. Mullins, 31 So. 2d 91, 96 (Ala. 2009).

> "'[T]o the extent that the trial court's issuance of a preliminary injunction is grounded only in questions of law based on undisputed facts, our longstanding rule that we review an injunction solely to determine whether the trial court exceeded its discretion should not apply.'"

1111554

Barber, 42 So. 3d at 78 (quoting Holiday Isle, LLC v. Adkins, 12 So. 3d 1173, 1176 (Ala. 2008)).

### III.  Analysis

### A.  The "Office of the State Comptroller" as a Defendant

The plaintiffs filed this action against the comptroller in his official capacity and against "the Office of the State Comptroller." The comptroller asserts that "[n]o entity known as 'the Office of the State Comptroller' exists."  The comptroller points to § 41-4-51, Ala. Code 1975, which provides that "[t]he division of control and accounts shall be headed by and be under the direction, supervision and control of an officer who shall be designated the Comptroller.  The Comptroller shall be appointed by the Director of Finance, with the approval of the Governor."

The AEA notes that "office of the State comptroller" is mentioned in § 34-25-5, Ala. Code 1975, and that "the Office of the Comptroller" is listed in § 40-1-16, Ala. Code 1975. In addition to these statutory references, §§ 17-16-2.1, 32-6-441, and 41-4-65, Ala. Code 1975, reference "the Comptroller's office," and  § 40-5-3, Ala. Code 1975, mentions "the office of the Comptroller."

26

1111554

The aforesaid statutory references appear, in effect, to serve as references to the State comptroller. Based on our review of those statutes and, with particular reliance on § 41-4-51 as described above, it appears that there is no such official entity of State government as "the Office of the State Comptroller." In any event, if such an entity did exist, the attempt to sue it as such in the present case would run afoul of the proscriptions of § 14 of the Alabama Constitution of 1901, immunizing the State and State agencies from liability. The action before us, therefore, is due to be dismissed insofar as it purports to state a claim against "the Office of the Comptroller."

B. Merits of the Appeal of the Preliminary Injunction

As indicated above, a preliminary injunction is appropriate only in circumstances where, "without the injunction the [party would] suffer immediate and irreparable injury," Barber, 42 So. 3d at 78, as a result of the activity sought to be enjoined. In other words, a party has not demonstrated that a preliminary injunction is justified if there is no demonstration that the injunction will prevent the threatened injury that is alleged. See, e.g., Ex parte B2K

27

1111554

<u>Sys., LLC</u>, [Ms. 1130742, Sept. 12, 2014] ___ So. 3d ___ (Ala. 2014) (reversing the trial court's entry of a preliminary injunction intended to protect against the loss of a computer-software "source code" on the ground that the source code was no less threatened without the imposition of the preliminary injunction than with it).

In the present case, the alleged injury with which the plaintiffs allege they are threatened -- their inability to receive payments by way of automated payroll deductions -- is no greater without the requested injunction than with it. Section 17-17-5(a) explicitly states that "[n]o person in the employment of the State of Alabama ... shall use any state, county, city, local school board, or other governmental agency funds, property, or time, for any political activities." Even more specifically, § 17-17-5(b) explicitly states "[n]o person in the employment of the State of Alabama ... may arrange by salary deduction or otherwise for any payments to a political action committee or arrange by salary deduction or otherwise for any payments for the dues of any person so employed to a membership organization which uses any portion of the dues for political activity." More specifically still, § 17-17-5(b)

28

goes on to prescribe detailed mechanics by which an organization requesting to receive payments by way of salary deductions is to certify certain information and when it is to certify that information, in order that the appropriate governmental entity can be assured that a payroll deduction related to that organization will not conflict with the above-quoted prohibitions.

Indeed, the lack of the necessity for the guidelines in order to implement the policy by which the plaintiffs claim to be threatened is borne out by the fact that, even under the previous version of § 17-17-5, which was lacking much of the explicit directives contained in the above-quoted passages added by the Act, the State was able to adopt and execute a policy beginning on or about July 1, 2010, by which it ceased making the types of automated deductions at issue. In its April 5, 2011, order, the Eleventh Circuit Court of Appeals stayed that portion of the federal district court's preliminary injunction that required the State defendants to honor employees' requests for salary deductions designated for the AEA that represented contributions to Alabama Voice of Teachers for Education, a political-action committee

affiliated with the AEA (known as "A-VOTE").  As we noted in

Davis, 92 So. 3d at 744:

> "The Eleventh Circuit noted that, before the enactment of the Act, the comptroller, based on preexisting Alabama law, already had ceased executing salary deductions from applicable State employees' paychecks that represented contributions to political-action committees. In particular, the Eleventh Circuit noted:
>
>> "'If, as the district court has preliminarily concluded, the new Act is unconstitutional and its provisions are nonseverable, the provisions of the Alabama Code on which the Comptroller's June 28, 2010 policy was based are unaffected by the new Act. There is nothing in the district court's memorandum opinion, or in the law of which we are aware, to justify a federal court injunction preventing the [federal-court] defendants from refusing to deduct for, or remit to, any organization amounts representing contributions to A-VOTE or any other [political-action committee], based on their interpretation of pre-Act 2010-761 state law. To the contrary, Ysursa v. Pocatello Educ. Ass'n, 555 U.S. 353, 129 S.Ct. 1093 (2009), clearly permits the defendants to refuse to collect and remit PAC contributions.'"

(Emphasis added.)

In other words, as both this Court and the Eleventh

Circuit Court of Appeals acknowledged, the provisions of the

prior version of § 17-17-5 were fully capable of being

executed, and were being executed, by the executive branch of

State government before the enactment of the 2010 amendments to § 17-17-5 effected by the Act. A fortiori, the much more specific provisions of the Act are and would be amenable to executive implementation without the necessity of the "guidelines." There is nothing in the record before us to indicate that, in the absence of the guidelines, the Act would not be enforced just as its predecessor was.

Like its predecessor, the Act itself explicitly prohibits payroll deductions for remittance to organizations for use in "political activities." The Act, however, now provides much more direction with respect to this prohibition, and it explicitly establishes specific, statutorily required mechanisms by which the prohibitions of the Act are to be implemented. It is the Act that is the source of the alleged harm the plaintiffs seek to avoid. Enjoining the implementation of the guidelines will not eliminate that source.

Yet, in this case, we are asked to address a complaint and, specifically, a preliminary injunction that focus solely on the alleged invalidity of the guidelines. The plaintiffs have not sought, and do not seek here to defend, any order

barring enforcement of the Act itself.  It is critical to observe, as does the comptroller, that  "the identified harm [is] the loss of dues payment by payroll deduction" and that this alleged harm is mandated by the Act itself.  As the comptroller further explains, "even if plaintiffs are fully successful in having the court declare the Guidelines void and enjoin their enforcement, Plaintiffs will still 'not be [permitted to] receiv[e] the funds that their members have sought to have deducted and forwarded to the Plaintiffs.'"[4] Indeed, the plaintiffs do not dispute that they would be disqualified from receiving remittances resulting from payroll deductions because each engages in at least some activity that qualifies as "political activity" under the Act.  See also Alabama Educ. Ass'n v. State Superintendent of Educ., 746 F.3d at 1140 ("Some of AEA and A-VOTE'S conduct indisputably falls within the Act's definition of political activity.").

"A court will not grant ... an injunction that would be of no benefit to the person seeking it."  42 Am Jur. 2d

---

[4]As the comptroller also notes, the plaintiffs will not necessarily fail to receive "the funds that their members have sought to have deducted and forwarded" but will receive those funds in a different manner than as a result of automated payroll deductions.

Injunctions § 23 (2010). "It is true that a court of equity may refuse to give any relief when it is apparent that that which it can give will not be effective or of benefit to the plaintiff." Virginia Ry. v. System Fed'n No. 40, 300 U.S. 515, 550 (1937). "The rule is stated in 32 C.J. 75, 76 Section 61 that: 'An injunction will be refused ... where for any reason it can be of no benefit to complainant ....'" Mitchell Irrigation Dist. v. Whiting, 59 Wyo. 52, 69, 136 P.2d 502, 508 (1943). By the same token, § 41-22-10 of the same AAPA upon which the plaintiffs rely provides that a court may issue injunctive relief as to the validity of a purported rule only "if the court finds that the rule, or its threatened application, interferes with or impairs or threatens to interfere with or impair, the legal rights or privileges of the plaintiff."

In this case, it is not the purported rule that "interferes with or impairs, or threatens to interfere with or impair," a right of privilege of the plaintiffs -- it is the underlying statute itself. In the absence of an identified harm that will be ameliorated by a requested injunction, there

1111554

is no warrant for the exercise of judicial authority and the intrusion into the parties' affairs represented thereby.[5]

## IV.  Conclusion

As noted, the plaintiffs' action is due to be dismissed insofar as it purports to name "the Office of the State Comptroller" as a defendant, and the circuit court is instructed to dismiss the action in that regard.  For the reasons stated above, the preliminary injunction issued by the circuit court is reversed, and this caused is remanded for further proceedings consistent with this opinion.

---

[5]Among other things, the comptroller also seeks reversal of the circuit court's judgment on the ground that the guidelines are not a "rule" under Ala. Code 1975, § 41-22-3(9).  Among their specific contentions is the argument that § 41-22-3(9)a. specifically excludes from the definition of a "rule" any "[s]tatements concerning only the internal management of an agency and not affecting private rights or procedures available to the public."  The comptroller contends that, even if the plaintiffs qualify as "the public" for purposes of § 41-22-3(9)a., the guidelines impose no material "procedure" not already specifically prescribed in the text of the applicable statutes, themselves, see § 17-17-5 and § 35-1-4.3 and -4.4, and that the plaintiffs have no "private right" to payment of dues by State-assisted salary deductions. Ysursa, 555 U.S. at 359.  In light of our reversal of the preliminary injunction on the ground discussed above, it is not necessary to address this and other additional arguments asserted by the comptroller as bases for relief from that injunction.

1111554

REVERSED AND REMANDED WITH INSTRUCTIONS.

Stuart, Bolin, Parker, Shaw, Wise, and Bryan, JJ., concur.

Moore, C.J., concurs specially.

1111554

MOORE, Chief Justice (concurring specially).

I fully concur in the main opinion. I write separately to comment on that portion of the preliminary injunction entered by the Montgomery Circuit Court that states that the State comptroller, Thomas L. White, Jr., "must, in all future pay periods, honor all employee requests for payroll deductions pertaining to, or involving," the Alabama Education Association ("the AEA") and the Alabama State Employees Association ("the ASEA"). This portion of the order effectively absolves the plaintiffs from having to obey § 17-17-5(b)(1), Ala. Code 1975, which states: "No person in the employment of the State of Alabama ... may arrange ... by salary deduction or otherwise for any payments for the dues of any person so employed to a membership organization which uses any portion of the dues for political activity." Under the trial court's injunction, the comptroller must honor "all employee requests for payroll deductions" for the benefit of the AEA and the ASEA regardless of whether those organizations use that revenue for political activity.

The complaint seeks relief from enforcement of guidelines issued by the comptroller on the ground that the guidelines

36

1111554

were improperly implemented. The complaint does not seek to enjoin the statute itself. Even though the validity of § 17-17-5(b)(1) is not at issue in this case, the trial court's preliminary injunction effectively suspends operation of that statute as it applies to the AEA and the ASEA and is due to be reversed.